Present:  All the Justices

EDUARDO V. VELAZQUEZ

OPINION BY
v.  Record No.  010926      JUSTICE LAWRENCE L.  KOONTZ, JR.
January 11, 2002
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal of a conviction for rape, we consider whether the trial court erred in permitting a Sexual Assault Nurse Examiner (SANE) to testify regarding her expert medical opinion on the causation of the victim's injuries and, if not, whether that testimony improperly invaded the province of the jury.

BACKGROUND

Under well established principles, we review the evidence and the reasonable inferences arising therefrom in the light most favorable to the Commonwealth, the party prevailing below. Turner v. Commonwealth, 259 Va. 645, 648, 529 S.E.2d 787, 789 (2000).  The fifteen-year-old female victim, A.L., was a regular visitor in the home of Eduardo V. Velazquez.  Velazquez's wife was a good friend of A.L.'s mother, and A.L. considered her to be "my second mom."  On one occasion when A.L. was visiting the home, Velazquez "was drunk and he tried kissing [A.L.]."  A.L. did not tell anyone about the incident because she was afraid that she would not be believed.

On March 18, 1997, A.L. went to the Velazquez home after school to retrieve a school library book which she had lent to Velazquez's wife. Velazquez and a male friend of his were present in the home. Velazquez told A.L. that he would get the book for her and then he asked his friend to go outside.

Velazquez told A.L. to sit down, and he removed her backpack from her shoulders. A.L. told Velazquez that she wanted to leave, but Velazquez attempted to kiss her. A.L. told him to stop. While she attempted to push Velazquez away from her, A.L. tripped and they both fell to the floor. At that point, A.L. was on her back; Velazquez was on top of her. Velazquez attempted to remove A.L.'s pants, while she again told him "no" and fought to get away.

After Velazquez succeeded in pulling A.L.'s pants and underwear down to her knees, he then pulled his own pants down. While Velazquez was on top of A.L. with his waist positioned between her knees and his hands beside her hips, A.L. felt a sharp pain in her vaginal area. The "bottom half" of Velazquez's body was making "an up and down movement" when A.L. felt that pain. During the assault, A.L. feared that she would "lose [her] virginity" and would become pregnant. Velazquez remained on top of A.L. for five minutes and then stood up after he became irritated with A.L.'s struggles to get away. A.L. attempted to leave, but Velazquez stopped her and told her "to

2

clean [herself] up." Velazquez left the room, and A.L. grabbed her backpack and left.

When A.L. arrived at her home, she telephoned a cousin and told her that she "was hurting in [her] vagina [sic] area." Later that evening, A.L.'s mother, who had spoken to the cousin, telephoned A.L. and asked her what was wrong. A.L. told her mother that Velazquez had "forced [her] to have sex with him."

A.L.'s mother contacted the Fairfax County Police, who subsequently interviewed A.L. at her home. The police also collected A.L.'s clothing for forensic analysis. A.L.'s mother then took her to a local hospital where Barbara Jean Patt, a registered nurse who was a certified SANE, examined her.

A.L.'s mother also contacted Velazquez's wife, who told her husband that A.L. had accused him of rape. Velazquez left Virginia that night, abandoning his wife, step-daughter, and infant daughter. Velazquez was subsequently apprehended in Texas in November 1997.

On December 21, 1997, Velazquez was indicted for the rape of A.L. pursuant to Code § 18.2-61. A jury trial commenced in the Circuit Court of Fairfax County on March 29, 1999. On that same day, Velazquez filed a motion in limine "to exclude any . . . 'conclusions' made by" Patt, contending that such testimony would invade the province of the jury. The motion was argued immediately prior to trial. Relying on Hussen v.

3

Commonwealth, 257 Va. 93, 511 S.E.2d 106, cert. denied, 526 U.S. 1137 (1999), the trial judge overruled the motion in limine, ruling that the SANE "can express an opinion as to whether [her findings were] consistent with consensual sex or not," but admonishing the Commonwealth that "I think it would be very limited in my view as to how far I'd let her go beyond that."

A.L. gave testimony in accord with the facts recited above. The Commonwealth called Patt to testify "as an expert in [the] diagnosis of sexual assault." Patt testified that she had been a registered nurse for 26 years, had 40 hours of classroom training and 40 hours of clinical training to qualify as a SANE, and had worked as a SANE for six and one half years. Patt further testified that as a SANE she had conducted approximately 150 examinations of children under the age of 16 who were victims of sexual assault and 350 examinations of adult victims of sexual assault.

Velazquez objected to Patt being qualified as an expert on the ground that experts qualified to testify about medical diagnosis "are doctors and scientists . . . . [S]he's a nurse . . . she does not have the scientific training to testify as to . . . causation." After the Commonwealth further examined Patt on the nature and extent of her clinical training, the trial court overruled the objection and ruled that Patt was qualified as an expert in the diagnosis of sexual assault.

4

Patt then testified that she had examined A.L. on the evening of March 18, 1997.  Describing the injuries that she had found during a pelvic examination, Patt stated that one deep tear in the labial tissue "most likely is consistent with attempted intercourse."  Velazquez objected to this testimony.  The trial court sustained the objection, admonished the jury to "disregard the answer as given," but indicated to the Commonwealth's Attorney that he could "rephrase the question."

After eliciting further testimony on the nature of A.L.'s injuries, the Commonwealth's Attorney asked Patt whether she had "an opinion within a reasonable degree of medical certainty as to whether the physical findings . . . are consistent with consensual sexual intercourse?"  Patt replied, "I have an opinion that it's inconsistent with consensual intercourse."  Velazquez objected "[t]o the phraseology" of Patt's answer.  The trial court overruled the objection.  The Commonwealth's Attorney then asked, "Why is it you have that opinion?"  Patt responded, "Because the injuries she had are consistent with non-consensual intercourse."

Forensic analysis of the DNA profile of a semen stain found on A.L.'s clothing was consistent with Velazquez's DNA.  The forensic expert testified that the possibility of a random match to an unrelated individual was "one in greater than the population of the world."

5

Velazquez testified in his own defense.  He maintained that A.L. had initiated a relationship with him sometime prior to March 18, 1997, and that they "did things that we shouldn't have done."  Velazquez denied having had sexual intercourse with A.L. on March 18, 1997, and claimed that he fell on top of A.L. while they were engaged in consensual foreplay.  He further testified that A.L. had pulled her own pants down and that he had inserted his fingers into her vagina, but that he complied with A.L.'s request that they not have intercourse because "I think we both believed that we were going too far."  Velazquez admitted that he had ejaculated after A.L. asked him not to have intercourse.

The jury found Velazquez guilty of rape and recommended a sentence of seven years.  By order entered July 7, 1999, the trial court imposed sentence in accord with the jury's verdict.

On July 9, 1999, Velazquez filed a motion to set aside the jury's verdict, asserting that the trial court had erred in qualifying Patt as an expert and in permitting her to testify on an ultimate issue of fact.  Velazquez asserted that Patt was not qualified to "render a medical diagnosis or opinion" because she had not gone to medical school and had not been licensed to practice medicine in Virginia.  Velazquez further asserted that

the evidence was insufficient to support a finding that he had actually penetrated A.L.'s vagina with his penis.[1]

Velazquez filed an appeal in the Court of Appeals of Virginia. In that appeal, he reasserted the issues raised in the motion to set aside the jury's verdict.

Addressing the threshold issue whether Patt was qualified to give expert testimony, the Court of Appeals held that Patt's training and experience established that she "had knowledge concerning matters beyond a lay person's common knowledge and would assist the jury in understanding the evidence" and, thus, that she qualified as "an expert in the diagnosis of a sexual assault." Velazquez v. Commonwealth, 35 Va. App. 189, 196, 543 S.E.2d 631, 635 (2001). Addressing what it characterized as an issue "of first impression," the Court of Appeals further held that a SANE can testify as an expert regarding the cause of trauma in a sexual assault case. In doing so, the Court of Appeals specifically rejected Velazquez's contention that only a licensed physician may testify regarding causation of injuries.[2] Id. at 197-99, 543 S.E.2d at 635-36.

---

[1]The trial court took no action on the motion to set aside the jury's verdict prior to the expiration of its jurisdiction under Rule 1:1.

[2]The Court of Appeals declined to address Velazquez's contention that permitting a SANE to provide a medical diagnosis would constitute the unlawful practice of medicine, finding that

Relying on Hussen, the Court of Appeals also rejected Velazquez's contention that Patt's testimony had invaded the province of the jury by expressing an opinion on an ultimate issue of fact. The Court held that "Patt's testimony only dealt with consistencies and inconsistencies. Patt did not testify that, in her opinion, [Velazquez] engaged in sexual intercourse with A.L. against A.L.'s will, the ultimate issue of the case." Velazquez, 35 Va. App. at 200, 543 S.E.2d at 637.

Finally, addressing the sufficiency of the evidence to prove penile penetration, the Court of Appeals held that the inconsistencies between A.L.'s testimony and that offered by Velazquez presented issues of credibility for the jury to consider. The Court held that A.L.'s testimony corroborated by the evidence of the injuries A.L. suffered was sufficient to allow the jury to find the necessary penile penetration. Id. at 202, 543 S.E.2d at 638.

For these reasons, the Court of Appeals affirmed Velazquez's conviction. By order dated July 31, 2001, we awarded Velazquez this appeal.

he had not adequately preserved the issue in the trial court. Velazquez, 35 Va. App. at 196 n.2, 543 S.E.2d at 635 n.2.

8

DISCUSSION

Velazquez first contends, as he did in the Court of Appeals, that the trial court erred in permitting Patt to testify as an expert in the field of sexual assault diagnosis because such diagnosis constitutes the practice of medicine and Patt is not a licensed physician.[3] In support of this contention, Velazquez cites Combs v. Norfolk & Western Railway Co., 256 Va. 490, 496, 507 S.E.2d 355, 358 (1998), for the proposition that "the question of the causation of a human injury is a component part of a diagnosis, which in turn is part of the practice of medicine."

Velazquez's reliance on Combs is misplaced. In Combs, we held that a witness, who had completed all the academic requirements for a degree in medicine but was not a licensed medical doctor, could not offer an opinion on medical causation

---

[3]To the extent that Velazquez asserts that Patt's testimony could constitute the unlawful practice of medicine, the Commonwealth contends that the Court of Appeals correctly determined that Velazquez failed to adequately preserve this issue in the trial court because it was raised for the first time only in the motion to set aside the jury's verdict. However, reviewing the record of the oral argument on his motion in limine to exclude SANE testimony and subsequently when he opposed Patt's qualification as an expert, we find that the issue was adequately preserved, albeit inartfully, by Velazquez's assertion that Patt was not a physician and would require specialized scientific training beyond that of a registered nurse to testify regarding the causation of A.L.'s injuries.

upon being qualified by the trial court to testify as an expert in biomechanical engineering. However, we reached this holding because a medical diagnosis was not within the field of expertise in which the witness had been qualified by the trial court, rather than because the expert was not a licensed medical doctor, as Velazquez asserts. Id. at 497-98, 507 S.E.2d at 359-60. The Court of Appeals correctly interpreted our holding in Combs.

The sole purpose of permitting expert testimony is to assist the trier of fact to understand the evidence presented or to determine a fact in issue. Generally, a witness is qualified to testify as an expert when the witness possesses sufficient knowledge, skill, or experience to make the witness competent to testify as an expert on the subject matter at issue. See Sami v. Varn, 260 Va. 280, 284, 535 S.E.2d 172, 174 (2000); Noll v. Rahal, 219 Va. 795, 800, 250 S.E.2d 741, 744 (1979). "An expert's testimony is admissible not only when scientific knowledge is required, but when experience and observation . . . give the expert knowledge of a subject beyond that of persons of common intelligence and ordinary experience. The scope of such evidence extends to any subject in respect of which one may derive special knowledge by experience, when [the witness's] knowledge of the matter in relation to which [the witness's] opinion is asked is such, or is so great, that it will probably

aid the trier [of fact] in the search for the truth." Neblett v. Hunter, 207 Va. 335, 339-40, 150 S.E.2d 115, 118 (1966); cf. Code § 8.01-401.3. In essence, all that is necessary for a witness to qualify as an expert is that the witness have sufficient knowledge of the subject to give value to the witness's opinion. Norfolk & Western Railway Co. v. Anderson, 207 Va. 567, 571, 151 S.E.2d 628, 631 (1966).

Velazquez does not cite any specific authority for the proposition that a SANE may not testify as an expert in sexual assault cases because she neither is a licensed medical doctor nor holds a medical degree. Rather, his entire argument is based on the premise that the statutes governing the practice of medicine as a profession, Code §§ 54.1-2900 through 54.1-2903, prohibit the expert testimony of a SANE in a sexual assault case because such testimony constitutes the practice of medicine. We disagree.

Code § 54.1-2900 defines the practice of medicine as "the prevention, diagnosis and treatment of human physical or mental ailments, conditions, diseases, pain or infirmities by any means or method." We are of opinion that the testimony of a SANE regarding the causation of physical injuries to a victim of a sexual assault is not the practice of medicine as contemplated by this statutory definition. Velazquez takes "diagnosis" of "human physical . . . conditions" entirely out of context to

11

support his argument.  Moreover, it has long been accepted that nurses and other healthcare professionals with the proper training, expertise, and experience are qualified to give expert opinions on medical causation in appropriate circumstances. See, e.g., Cates v. Commonwealth, 111 Va. 837, 843, 69 S.E. 520, 522 (1910); see also Gregory v. State, 56 S.W.3d 164, 179-80 (Tex. App. 2001) and cases collected therein at n.10; State v. White, 457 S.E.2d 841, 858 (N.C. 1995).  Accordingly, we hold that a SANE need not be licensed to practice medicine to express an expert opinion on the causation of injuries in the context of an alleged sexual assault, nor does the expression of such an opinion by a SANE in a trial constitute the unlawful practice of medicine.  Thus, there is no error in the judgment of the Court of Appeals on this issue.

"The issue whether a [potential] witness is qualified to testify as an expert on a given subject is a matter submitted to the trial court's discretion, and the trial court's ruling in this regard will not be disturbed on appeal unless it plainly appears that the witness was not qualified."  Johnson v. Commonwealth, 259 Va. 654, 679, 529 S.E.2d 769, 783 (2000).  Velazquez does not contend that Patt's knowledge, skill, and experience were insufficient to give value to her opinion, and the record amply demonstrates that she possessed specialized knowledge of the subject matter at issue beyond that of persons

12

of common intelligence and ordinary experience.  Accordingly, the Court of Appeals correctly held that the trial court did not err in permitting Patt to testify as an expert in this case.

Velazquez next contends that, even if Patt was qualified to express an opinion on the causation of A.L.'s injuries, her testimony on that issue improperly invaded the province of the jury because she expressed an opinion on an ultimate issue of fact.  Velazquez contends that the expert opinion in this case went beyond that permitted in Hussen and effectively "closed the circle" by permitting the expert witness to testify that the injuries were, in her opinion, the result of non-consensual intercourse.[4]  We agree with Velazquez's contention.

We consistently have held that the admission of expert opinion upon an ultimate issue of fact in a criminal case is impermissible because it invades the province of the jury. Llamera v. Commonwealth, 243 Va. 262, 264, 414 S.E.2d 597, 598 (1992); Bond v. Commonwealth, 226 Va. 534, 538, 311 S.E.2d 769, 771-72 (1984); Cartera v. Commonwealth, 219 Va. 516, 519, 248

---

[4]We reject the Commonwealth's contention that Velazquez's failure to object to Patt's ultimate conclusion that "the injuries [A.L.] had are consistent with non-consensual intercourse" at the time the statement was made constituted a waiver.  In the context of the entire trial, it is clear that Velazquez had a continuing objection to Patt's testifying as to causation and any "conclusions" she had drawn.  The trial court was aware of and fully considered that objection.

13

S.E.2d 784, 786 (1978); Webb v. Commonwealth, 204 Va. 24, 34, 129 S.E.2d 22, 29 (1963).

The Cartera case is particularly instructive in this instance. In that case, the defendant was charged with two counts of rape. A physician, who had examined and treated the victims, was permitted to express his opinion that the victims had been raped. 219 Va. at 518, 248 S.E.2d at 785. We held that this was reversible error because "[w]hether rape had occurred was the precise and ultimate issue in the case. Determination of this issue did not require special knowledge or experience. To permit the doctor to express his opinion upon the subject invaded the province of the jury." Id. at 519, 248 S.E.2d at 786.

In Hussen, we held that the SANE's testimony that the victim's injury "was not consistent with consensual, first time intercourse," was "not a comment on one of the ultimate issues of fact to be determined by the jury, that is, whether the defendant's conduct was against the victim's will." 257 Va. at 99, 511 S.E.2d at 109. By contrast, in the present case Patt initially testified that A.L.'s injuries were "inconsistent with consensual intercourse," and that she held that opinion because those injuries were "consistent with non-consensual intercourse." Under the rationale of Hussen, Patt's initial opinion, that A.L.'s injuries were "inconsistent with consensual

14

intercourse," does not preclude a finding that A.L.'s injuries resulted from some trauma other than a rape. However, Patt's additional opinion, that A.L.'s injuries were "consistent with non-consensual intercourse," when expressed specifically in connection with her initial opinion, significantly expands that initial opinion. In doing so, Patt's testimony as a whole clearly expressed her opinion that A.L. was raped because her opinion excluded all other trauma as the cause of A.L.'s injuries. In this sense, the combination of the two opinions "closed the circle." As in Cartera, whether rape had occurred was the precise and ultimate issue in the case. Accordingly, we hold that Patt's opinion testimony improperly invaded the province of the jury on the ultimate issue of fact to be decided in the case, and the Court of Appeals erred in holding otherwise.

Although the error in admitting improper expert opinion testimony requires reversal of Velazquez's conviction, we must nonetheless consider his challenge to the sufficiency of the evidence. If the evidence adduced at trial, excluding the improperly admitted expert opinion testimony, was insufficient to convict Velazquez, he is entitled to an acquittal; if he is so entitled, a remand for retrial would violate the Constitution's prohibition against double jeopardy. See Parsons v. Commonwealth, 32 Va. App. 576, 581, 529 S.E.2d 810, 812-13

15

(2000); see also Overbee v. Commonwealth, 227 Va. 238, 245, 315 S.E.2d 242, 245 (1984). As established in Burks v. United States, 437 U.S. 1, 18 (1978), a full sufficiency analysis is required to satisfy the mandate of the Double Jeopardy Clause of the federal Constitution.

Velazquez contends that the evidence supports the reasonable hypothesis that he only penetrated A.L.'s vagina with his fingers. Stressing A.L.'s testimony concerning the position of his body when she first felt a sharp pain in her vagina, he contends that it would have been impossible for him to have achieved penile penetration of her vagina. In addition, because he admitted inserting his fingers into A.L.'s vagina and A.L. testified that she did not know what caused the sharp pain, Velazquez contends that the evidence was insufficient to prove penile penetration and, thus, all the necessary elements of rape. We disagree.

Velazquez's interpretation of the evidence discounts several element's of A.L.'s testimony, particularly her description of the motion of his body during the time that she felt the pain and the length of time this activity continued. While Velazquez's contention that A.L.'s pain and injuries could have resulted from digital penetration is not wholly without support in the record, neither is the evidence contradictory to a finding of penile penetration. As such, the matter was one to

16

be decided by the trier of fact.  Accordingly, we hold that the evidence was sufficient to support the jury's verdict and, thus, that Velazquez is not entitled to an acquittal and upon remand the Commonwealth may retry Velazquez for rape.

CONCLUSION

For these reasons, we will affirm in part and reverse in part the judgment of the Court of Appeals, vacate Velazquez's conviction, and remand the case to the Court of Appeals with direction that the case be remanded to the trial court for a new trial, if the Commonwealth be so advised.

<u>Affirmed in part,
reversed in part,
and remanded</u>.