## CIRCUIT COURT OF THE CITY OF PORTSMOUTH

John Patrick McCarthy

v.

Chadwick W. Atwood

April 18, 2005

Case No. (Law) 04-1219

BY JUDGE MARK S. DAVIS

This matter is before the Court on plaintiff's motion in limine concerning opinions by defense expert witness Scott W. Sautter, Ph. D., as well as a motion in limine addressing numerous items of evidence that plaintiff asserts are more prejudicial than probative. The parties appeared before the Court, by counsel, on March 25, 2005, to argue the motions, but the Court re-scheduled argument on the motions to April 8, 2005, because Dr. Sautter's report was not yet complete.[1] The parties appeared before the Court again on April 8,

---

[1] Plaintiff is represented by Rob Turner, Esquire, with the law firm of Protogyrou & Rigney, P.L.C. Defendant is represented by Joseph M. Young, Esquire, with the law firm of Hall, Fox and Atlee, P.C. The underinsured motorist carrier, Nationwide Insurance Company, is represented by Peter A. Teumer, Esquire, with the law firm of Robey, Teumer & Drash.

2005, for argument. The Court has now received the report of Dr. Sautter, has considered the arguments of counsel from both hearings, as well as the briefs filed by each party, and reaches the following conclusions.

## I. Factual and Procedural History

This case arises from a vehicle accident of July 7, 2000. Plaintiff alleges he suffered a head injury in this accident. Pursuant to a motion of the defendant, the Court ordered the plaintiff to submit to a medical examination by Scott W. Sautter, Ph. D., a neuropsychologist, pursuant to Rule 4:10 of the Rules of the Supreme Court of Virginia. Defendant designated Dr. Sautter as an expert on or about March 15, 2005, prior to production of his report. The designation indicates Dr. Sautter is expected to testify about the neuropsychological testing he and his staff administered to the plaintiff, and "to apply his knowledge, training, and experience to provide information and opinions on the test results and test interpretations."

Dr. Sautter subsequently produced his report, which contains numerous opinions and data/test results. At the hearing of April 8, 2005, counsel for the defendant indicated that he intended to rely upon the impressions contained in Dr. Sautter's Neuropsychological Assessment produced on or about March 29, 2005. His impressions are as follows:

> Overall impressions of neuropsychological and emotional functioning are consistent with generally intact cognitive functions as observed on this current evaluation, with mildly deficient performance in thinking flexibly as task demands change, verbal conceptualization (attributable to a low information subtest score on the intelligence test), and editing skills requiring spelling, syntax, and grammar knowledge. The rest of the profile was found to be intact. With regard to psychological factors contributing to presenting complaints, there were inconsistencies observed in effort testing, below expected performance on the information subtest of the intelligence test when compared to other areas, and a potential finding of seeking attention in the form of secondary gain on the actuarial and objective personality assessment. The inconsistency on the effort testing was found when he passed the easier and face valid tests, but performed worse on a more comprehensive test, particularly in light of self-reported severe symptoms of memory loss and performing within expectations on the neuropsychological memory testing.

Given the history, it is probable that the plaintiff did have a concussion at the time of the accident; however, cognitive deficits that would have been present would have been expected to resolve within a few weeks to a few months according to large controlled studies of brain injury. Any lingering deficits would be due to other factors and, in this case, may include a premature, non-accident related shrinking of the brain that could be related to alcohol abuse or other unknown degenerative disorders. The plaintiff more than likely has an alcohol dependence with abuse, had significant cocaine and heroin abuse within six months of his accident and continuing reportedly for the next 18 months or so, and has significant depression. He does complain of headaches, but this is superimposed on significant alcohol abuse and taking pain medication. He appears to have in addition to the pain complaints a personality disorder with features of being histrionic and passive-dependant. Secondary gain in seeking attention for his medical complaints in the context of a lawsuit is possible.

Treatment recommendations are to reassure him that he is actually functional at a higher level than he believes, accepting that he is an alcoholic who is in need of drying out and alcohol rehabilitation. This would require an inpatient stay of at least 30 days. It is not recommended that he attend a brain injury rehabilitation facility, but rather a psychiatric facility for the treatment of alcoholism. A complicating factor is the extent of pain reports and to differentiate this from chronic debilitating pain from annoying pain, without the presence of alcohol and drugs. Finally, he may be encouraged to participate in gainful activity once discharged, if not competitive employment then volunteer activities. Prognosis for this is probably poor as the objective personality assessment indicated that he is not likely to accept a psychological explanation for his behavior.

Dr. Sautter then went on to list seven diagnostic impressions, as follows: probable major depression with anxious features, personality disorder with histrionic and passive-dependent features, alcohol dependence and abuse, cocaine and heroin abuse in remission, self-reported pain complaints, intact cognitive function, possible secondary gain seeking attention for his complaints and in the context of a lawsuit.

## *II. Contentions of the Parties*

The primary thrust of plaintiff's motions in limine is to "move[] the Court to exclude from the trial of this case any opinion by defense expert, Scott W. Sautter, Ph. D., concerning the cause or extent of the plaintiff's brain injury and resulting cognitive dysfunction and memory loss. . . ." Plaintiff relies on *John v. Im*, 263 Va. 315, 321, 559 S.E.2d 694, 695 (2002), for the proposition that "a psychologist, who is not a medical doctor, [is] not qualified to state an expert medical opinion regarding the cause of [a] plaintiff's traumatic brain injury. . . ."

Defendant has responded by submitting to the Court a copy of the article, "*John v. Im*: Time for Clarification and Revisiting the Decision by the Supreme Court of Virginia," *Journal of Civil Litigation*, vol. XV, no. 2, p. 161 (Summer 2003), by John D. McGavin, Esquire, one of the attorneys in that case. In that article, Mr. McGavin argues that "the [*Im*] decision is being more broadly interpreted regarding the field of neuropsychology in mild traumatic brain injuries than anticipated by any of the parties or by the Court." McGavin notes that:

> The blanket rule that comes from *John v. Im*, which states that only a medical doctor may render an opinion on causation, is directly contradictory to the evidence presented by the neuropsychologists and directly contradictory to how medical doctors obtain assessments of individuals with complaints consistent with mild traumatic brain injury. Specifically, medical experts attempting to determine whether a patient suffers from mild traumatic brain injury, in the absence of a loss of consciousness and in the presence of negative diagnostic tests, almost always rely upon neuropsychological assessment. Medical doctors are not trained to render neuropsychological assessments and are not trained to interpret the raw data.

McGavin also points out that the Virginia Supreme Court, in the same year, recognized an exception to the blanket rule requiring physicians to render such opinions in the case of *Velazquez v. Commonwealth*, 263 Va. 95, 557 S.E.2d 213 (2002), where it held that sexual assault nurse examiners (SANEs) could testify as experts regarding the causation of injuries in alleged sexual assaults. *See John*, 263 Va. at 321, n. 2, 559 S.E.2d at 697, n. 2. McGavin further noted that a specifically carved-out exception is also stated

under Va. Code § 8.01-401.3, allowing a doctor of chiropractic to testify as an expert witness regarding his diagnosis of a patient.

In addition to plaintiff's primary objection to the report and testimony of Dr. Sautter, plaintiff has also filed a motion in limine seeking to exclude: (1) reference by defendant to plaintiff's prior adjudication pursuant to the first offender drug statute under Va. Code § 18.2-251, (2) reference to plaintiff's consumption of alcohol before and after the date of the injury alleged, (3) reference to plaintiff's use of heroin and cocaine before and after the date of the injury alleged, (4) reference to plaintiff's receipt of long term disability payments and social security disability payment, (5) reference to plaintiff's prior motor vehicle accidents, (6) reference to plaintiff's involvement in a barroom fight in the 1980s, (7) reference to plaintiff's bankruptcy filings in 2000 and 2002, (8) reference to plaintiff's pre-accident chiropractic care, and (9) reference to plaintiff's relationship with two women. Also before the Court is defendant's motion to unseal the pre-sentence report from plaintiff's adjudication as a first offender pursuant to Va. Code § 18.2-251.

In considering these motions in limine, the Court observes that a motion in limine aids the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial. *Harward v. Commonwealth*, 5 Va. App. 468, 474, 364 S.E.2d 511, 514 (1988) (noting motions in limine narrow issues, prevent trial delay, avoid expense, and promote judicial efficiency); *see Smith v. Board of County Commr's of Lyon*, 2003 U.S. Dist. LEXIS 9375, * 2 (D. Kan. 2003) (citing *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)). The movant generally has the burden of demonstrating that the evidence is inadmissible on any relevant ground. *Smith*, 2003 U.S. Dist. LEXIS at *3 (citing *Plair v. E. J. Brach & Sons, Inc.*, 864 F. Supp. 67, 69 (N.D. Ill. 1994)). However, unless the moving party presents sufficient evidence at the time of the motion and unless the issue is such that it can be decided in advance, many pretrial rulings must await presentation of evidence in a trial context. *Harward*, 5 Va. App. at 474, 364 S.E.2d at 514.

## III. Discussion

The Court will first address the admissibility of Dr. Sautter's opinions and then address the remaining motions.

## A. Dr. Sautter's Opinions

In 1993, the Virginia General Assembly enacted Va. Code § 8.01-401.3, which, among other things, incorporated Federal Rule of Evidence 702 (as it existed at that time) into Virginia law.[2] The statute provides as follows:

> In a civil proceeding, if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

The Virginia Supreme Court recently addressed the use of expert opinion, and the application of Va. Code § 8.01-401.3, in *Velazquez v. Commonwealth*, 263 Va. 95, 103-04, 557 S.E.2d 213, 218-19 (2002). The Court stated, in discussing the expertise of a sexual assault nurse examiner (SANE), that:

> The sole purpose of permitting expert testimony is to assist the trier of fact to understand the evidence presented or to determine a fact in issue. Generally, a witness is qualified to testify as an expert when the witness possesses sufficient knowledge, skill, or experience to make the witness competent to testify as an expert on the subject matter at issue. *See Sami v. Varn*, 260 Va. 280, 284, 535 S.E.2d 172, 174 (2000); *Noll v. Rahal*, 219 Va. 795, 800, 250 S.E.2d 741, 744 (1979). "An expert's testimony is admissible not only when scientific knowledge is required, but when experience and observation . . . give the expert knowledge of a subject beyond that of persons of common intelligence and ordinary experience. The scope of such evidence extends to any subject in respect of which one may derive special knowledge by experience, when [the witness's] knowledge of the matter in relation to which [the

---

[2] Federal Rule of Evidence 702 was amended in 2000 to set forth three standards that must be met before a challenged expert's opinion can be admitted in an attempt to codify the U.S. Supreme Court's opinions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and *Kumbo Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). *United States v. Mamah*, 332 F.3d 475, 477 (7th Cir. 2003).

witness's] opinion is asked is such, or is so great, that it will probably aid the trier [of fact] in the search for the truth." *Neblett v. Hunter*, 207 Va. 335, 339-40, 150 S.E.2d 115, 118 (1996); *cf.* Va. Code § 8.01-401.3. In essence, all that is necessary for a witness to qualify as an expert is that the witness have sufficient knowledge of the subject to give value to the witness's opinion. *Norfolk & Western Ry. v. Anderson*, 207 Va. 567, 571, 151 S.E.2d 628, 631 (1996). . . .

Velazquez does not cite any specific authority for the proposition that a SANE may not testify as an expert in sexual assault cases because she neither is a licensed medical doctor nor holds a medical degree. Rather, his entire argument is based on the premise that the statutes governing the practice of medicine as a profession, Code §§ 54.1-2900 through 54.1-2903, prohibit the expert testimony of a SANE in a sexual assault case because such testimony constitutes the practice of medicine. We disagree. . . .

Code § 54.1-2900 defines the practice of medicine as "the prevention, diagnosis, and treatment of human physical or mental ailments, conditions, diseases, pain, or infirmities by any means or method." We are of opinion that the testimony of a SANE regarding the causation of physical injuries to a victim of a sexual assault is not the practice of medicine as contemplated by this statutory definition. Velazquez takes "diagnosis" of "human physical . . . conditions" entirely out of context to support his argument. Moreover, it has long been accepted that nurses and other healthcare professionals with the proper training, expertise, and experience are qualified to give expert opinions on medical causation in appropriate circumstances. *See, e.g., Cates v. Commonwealth*, 111 Va. 837, 843, 69 S.E. 520, 522 (1910); *see also Gregory v. State*, 56 S.W.3d 164, 179-80 (Tex. App. 2001), and cases collected therein at n. 10; *State v. White*, 457 S.E.2d 841, 858 (N.C. 1995). Accordingly, we hold that a SANE need not be licensed to practice medicine to express an expert opinion on the causation of injuries in the context of an alleged sexual assault, nor does the expression of such an opinion by a SANE in a trial constitute the unlawful practice of medicine. Thus, there is no error in the judgment of the Court of Appeals on this issue. . . .

"The issue whether a [potential] witness is qualified to testify as an expert on a given subject is a matter submitted to the trial court's discretion, and the trial court's ruling in this regard will not be disturbed on appeal unless it plainly appears that the witness was not qualified." *Johnson v. Commonwealth*, 259 Va. 654, 679, 529 S.E.2d 769, 783 (2000). Velazquez does not contend that Patt's knowledge, skill, and experience were insufficient to give value to her opinion, and the record amply demonstrates that she possessed specialized knowledge of the subject matter at issue beyond that of persons of common intelligence and ordinary experience. Accordingly, the Court of Appeals correctly held that the trial court did not err in permitting Patt to testify as an expert in this case.

*Id.*

In *Im*, 263 Va. at 321, n. 2, 559 S.E.2d at 697, n. 2, the Virginia Supreme Court recognized that it had created a limited "exception to the general rule that only a medical doctor may render an opinion regarding the cause of a physical human injury." The Court went on to state that "[b]ecause our holding in *Velazquez* is limited to the unique context of a SANE's expert opinion concerning the causation of injuries in a sexual assault case, the holding does not change the general rule stated above that only a medical doctor may give an expert opinion about the cause of a physical human injury." *Id.* Therefore, the question squarely before this Court is whether the Virginia Supreme Court would permit a neuropsychologist to testify to causation as another exception to the general rule stated above. Furthermore, if the Virginia Supreme Court would not permit Dr. Sautter to testify as to causation, the next question is whether Dr. Sautter can provide any of his opinions to the extent that they do not reach causation of a physical human injury.

The Court has reviewed *Im*, as well as several subsequent opinions. For example, in *Norfolk & Western v. Keeling*, 265 Va. 228, 234, 567 S.E.2d 452, 457 (2003), the employer in a Federal Employers Liability Act (FELA) case argued on appeal that the trial court improperly excluded expert testimony of a biomechanical engineer with a specialization in vestibular mechanics. The biomechanical engineer sought to testify that "fistulas were generally caused by infections that caused bone or tissue to deteriorate." *Id.* Since the plaintiff suffered from a fistula, and the case involved the search for the cause of the fistula as it related to the employer, the Virginia Supreme Court held that his testimony "clearly came within the prohibition recited in *Combs* and *Im*." *Id.*

The Virginia Court of Appeals, sitting en banc, also commented on *Im* in *Artis v. Ottenberg's Bakers, Inc.*, 45 Va. App. 72, 89, n. 3, 608 S.E.2d 512, 520, n. 3 (2005), stating that *Im* stood for the proposition that a licensed psychologist's opinion is not "medical" evidence, "although a psychologist may certainly be qualified to render an *expert* opinion, an expert opinion is not necessarily equivalent to a medical opinion."[3] *Id.* In the dissent of that opinion, it is similarly noted that *Im* applied to opinions on causation of a physical injury. *Artis*, 45 Va. App. 72, at 107, n. 6, 608 S.E.2d 512, at 529, n. 6. The dissent went on to note that the clinical psychologist who had treated the workers' compensation claimant in that case had opined that claimant's "feigning the robbery was a direct result of his post-traumatic stress disorder, which itself was a direct result of his work-related accident." *Id.* The dissent argued that such an opinion was not about a "physical injury" and was therefore excluded from the *Im* rule. The dissent in *Im* also noted that:

> It is well settled in Virginia that clinical psychologists with the proper training, expertise, and experience are generally qualified to give expert testimony regarding a person's mental condition and to state an expert medical opinion regarding the relationship between that person's mental condition and his or her conduct. *See, e.g., Ward v. Commonwealth*, 264 Va. 648, 653, 570 S.E.2d 827, 831 (2002) (holding that a clinical psychologist was properly permitted to give expert testimony "about the victim's mental condition.").

Interestingly, the *Ward* decision was issued in November of 2002 and the *Im* decision was issued in March 2002.

The *Artis* decision arises from a workers' compensation case in which the claimant alleged back pain, rage, emotional distress, and depression, and where the Workers' Compensation Commission "is not bound by statutory or common law rules of pleading or evidence." *Billy Norton/Norton's Marina, Inc. v. Gill*, 1999 Va. App. LEXIS 442, *6, Record No. 0579-99-2 (Va. App. 1999) (unpublished disposition citing Rule 2.2 of the Commission's rules). Therefore, the application of *Artis* must be viewed in that context. However, the distinction between a medical opinion offered by a psychologist regarding the relationship between a person's mental condition and his or her conduct, versus a medical opinion offered by a psychologist regarding the cause of a

---

[3] The implication here is that the opinion of the psychologist is not the equivalent of a medical doctor regarding a physical human injury.

physical human injury, does seem to be borne out by the language of *Im*, where the Court, addressing a mild traumatic brain injury opinion, stated:

> An opinion concerning the causation of a particular physical human injury is a component of a diagnosis, which is part of the practice of medicine. *Combo v. Norfolk & W. Ry.*, 256 Va. 490, 496, 507 S.E.2d 355, 358, (1998). Nash was a licensed psychologist, not a medical doctor. Therefore, since Nash was not a medical doctor, he was not qualified to state an expert medical opinion regarding the cause of John's injury.

Even in *Velazquez*, 263 Va. at 103-04, 557 S.E.2d at 218-19, the Court noted that Va. Code § 54.1-2900 defines the practice of medicine as "the prevention, diagnosis, and treatment of human physical or *mental ailments*, conditions, diseases, pain, or infirmities by any means or method." (Emphasis added.)[4] Therefore, reading the statement in *Artis* within the context of the controlling Virginia Supreme Court precedent and considering the fact that the evidentiary rules were not binding in *Artis*, the current state of the law in Virginia appears to be that a neuropsychologist can render a medical opinion under certain circumstances as to causation of mental ailments, conditions, and diseases, but not as to a physical human injury. *See also Guarnieri v. Pennsylvania Fed'n Brotherhood of Maint. Way Employees*, 153 F. Supp. 2d 736, 741-43 (E.D. Pa. 2001). Therefore, it appears that Dr. Sautter can render medical opinions within his neuropsychological expertise as to the plaintiff's mental ailments, conditions, and diseases, as well as the relationship between his conduct and such mental ailments, conditions, and diseases, assuming defendant shows the relevance of such opinions. *Ward*, 264 Va. at 653, 570 S.E.2d at 831 ("Dr. Wenzel [a licensed clinical psychologist] simply testified about the victim's mental conditions, which was proper"). However, consistent with the Virginia Supreme Court's ruling in *Im*, Dr. Sautter cannot

---

[4] In Va. Code § 54.1-3600, addressing the regulation of psychology, clinical psychology is defined to include assessment of neuropsychological functioning. The Virginia Administrative Code also recognizes the particular expertise of neuropsychologists, noting that, in order for the Department of Medical Assistance Services (DMAS) to authorize payment to nursing homes caring for those with traumatic brain injuries, they must "[e]nsure that each resident on the unit is evaluated on an annual basis by a licensed clinical psychologist with expertise in neuropsychology or a neurologist." 12 V.A.C. 30-90-330(c)(7).

render an opinion that plaintiff did or did not sustain a "mild traumatic brain injury" as a result of his automobile accident since such an opinion is an opinion concerning the causation of a "physical human injury" which can only be rendered by a medical doctor.

Other courts have reached similar conclusions. *See Summers v. Missouri Pacific Railroad System*, 897 F. Supp. 533, 540 (E.D. Okla. 1995) (finding that opinion of neuropsychologist on causation of a medical issue must be excluded because a psychologist is not an expert in the field of medicine); *see also Edmunds v. Illinois Central Gulf RR.*, 910 F.2d 1284, 1287 (5th Cir. 1990) (a pre-*Daubert* finding that clinical psychologist was not qualified to render an opinion that stress worsened plaintiff's coronary artery disease); *but see Hutchison v. American Family Mutual Ins. Co.*, 514 N.W.2d 882, 886-87 (Iowa 1994) (holding that neuropsychologist is competent to testify to causation if she meets the Fed. R. Evid. 702 standard and collecting cases on both sides of issue).

While the Court is aware of the concerns expressed in the McGavin article, it is bound by the current controlling precedent. Since the deadline for naming expert witnesses has passed and since defendant has not named a medical doctor as an expert, the testimony of Dr. Sautter (as a neuropsychologist) will be limited to relevant opinions that do not concern causation of a physical human injury. If, as defendant suggests, medical doctors are not trained to render neuropsychological assessments and to interpret raw data, the ideal presentation of such evidence would involve expert evidence from both a neuropsychologist and a medical doctor. As Professor Friend notes in his text, *The Law of Evidence in Virginia*, 6th ed. 2003, the Virginia Supreme Court in *McMunn v. Tatum*, 237 Va. 558, 379 S.E.2d 908 (1989), addressed admissibility of the basis of an expert's opinion. The Court said that, under Va. Code § 8.01-401.1, an expert may on direct examination reveal the "nature" of the basis for an opinion, but the code provision "does not authorize the admission of evidence, upon the direct examination of an expert witness, of hearsay matters of opinion upon which the expert relied in reaching his own opinion, notwithstanding the fact that the opinion of the expert witness is itself admitted. . . ." *Id.* at 566, 379 S.E.2d at 912.

Professor Friend opines that *McMunn*, and *Todd v. Williams*, 242 Va. 178, 409 S.E.2d 450 (1991), addressed only the issue of admissibility of the details of hearsay sources which are matters of opinion, and the question of whether hearsay matters of fact should be admitted on direct examination is left undecided by the cases. Professor Friend goes on, however, to note that "analysis and research suggests strongly that the statute was intended only to

make the expert's opinion admissible, not to permit the admission on direct examination of *the hearsay source of information itself*." Professor Friend concludes that the expert witness should therefore be permitted on direct examination to state what the source of the information was on which he relied (e.g. hospital records), but he should only be permitted on direct examination to disclose the *nature* of the source, *not* the actual context or language of the source. This Court agrees. Therefore, presenting the testimony of a neuropsychologist for the actual content of his test results and findings, followed by testimony from a medical doctor regarding his physical human injury causation opinion, which relies upon the neuropsychologist's test results and findings, may now be the proper method of introducing neuropsychological test results. The introduction of such results by the neuropsychologist/tester serves to strengthen the opinion of the physician on physical human injury causation. Of course, the neuropsychologist may testify independently (without the accompanying testimony of a medical doctor) regarding causation of mental injuries.

Accordingly, all of the seven diagnostic impressions offered by Dr. Sautter are admissible unless shown otherwise on some ground not presented to the Court here. However, his impression that the plaintiff had a concussion of the brain at the time of the accident is not an opinion he can render, since it is an opinion concerning the causation of a particular physical human injury. *Im*, 263 Va. 321, 559 S.E.2d at 695. Without an accompanying medical doctor's opinion, any opinion of Dr. Sautter regarding a physical human injury is not relevant because it cannot be tied to a relevant question on which the defense is prepared to present evidence.

## B. First Offender Adjudication

Defendant suggests that plaintiff's adjudication as a first offender, pursuant to Va. Code § 18.2-251, should be admissible for purposes of impeaching his credibility. The Virginia first offender statute provides that, whenever a person, who has not previously been convicted of a drug offense, pleads guilty to possession of a controlled substance, the court upon a finding that the facts would justify a finding of guilt, "without entering a judgment of guilt," may defer further proceedings and place him on probation upon terms and conditions. The statute further provides that, if the person is found in violation of such probation, "the court may enter an adjudication of guilt," and, "[u]pon fulfillment of the terms and conditions, the court shall discharge the person and dismiss the proceedings against him." The statute goes on to provide that "[d]ischarge and dismissal under this section shall be without

adjudication of guilt and is a conviction *only for the purposes of applying this section in subsequent proceedings.*" (Emphasis added.)

It is generally accepted that a witness or party in a civil case may be impeached with a prior felony conviction. *Payne v. Carroll,* 250 Va. 336, 338-40, 461 S.E.2d 837, 838-39 (1995) (finding that Va. Code § 19.2-269, permitting such impeachment, applies in civil cases). Defendant suggests that a prior conviction, for purposes of such impeachment, includes a guilty plea (such as that offered by a first offender) even though there was no finding of guilt by a court. *See Jewel v. Commonwealth,* 30 Va. App. 416, 517 S.E.2d 264 (1999). While it is true that Va. Code § 18.2-251 provides for a plea of guilty, it does not provide for entry of a judgment of guilt where a defendant is placed on first offender status and the charge is ultimately dismissed, as took place in this case. Furthermore, it specifically provides that discharge and dismissal of the charge is a conviction "only for the purposes of applying this section in subsequent proceedings." Therefore, such a plea of guilt, under Va. Code § 18.2-251, is not a prior felony conviction that can be used to impeach a witness. *See Raney v. Commonwealth,* 45 Va. App. 166, 171-75, 609 S.E.2d 84 (2005) (first offender adjudication is not a final judgment of conviction); *see Harrell v. State,* 331 Ark. 232, 237, 962 S.W.2d 325, 327 (1998); *see also Davis v. State,* 269 Ga. 276, 277-78, 496 S.E.2d 699, 702, 703 (1998) (reaching same conclusion when applying Georgia first offender statute).

### C. Consumption of Alcohol

Defendant asserts there is significant evidence that plaintiff "is and has been a heavy drinker" of alcohol and that such use of alcohol "is a factor that may impact on brain abnormalities that are being attributed to traumatic injury." Defendant's Brief in Opposition to Plaintiff's Motion in Limine, p. 5. Defendant further asserts that such chronic alcohol abuse has been shown to produce significant impairment of tasks involving learning, recent memory, mental flexibility, problem solving, and executive functions. Defendant's Brief, p. 5. Therefore, defendant asserts that plaintiff's alleged alcohol abuse affects efforts to determine "whether or not [he] has or does not have a traumatic brain injury," Defendant's Brief, p. 5, as well as efforts to determine whether he does or does not have mental effects from the accident. Because the Court has already noted above that Dr. Sautter cannot testify as to causation of the alleged traumatic brain injury, the Court need not consider whether Dr. Sautter can testify regarding alcohol exposure as a factor in assessing whether or not plaintiff has a traumatic brain injury. However, because the Court has held that Dr. Sautter may render medical opinions

within his neuropsychological expertise as to the plaintiff's mental condition, it is necessary to consider whether he may refer to alcohol consumption in rendering such opinions and to consider the extent to which defendant may cross-examine plaintiff's experts regarding plaintiff's alleged alcohol abuse.

This issue was addressed by the Virginia Supreme Court in *Velocity Express Mid-Atlantic v. Hugen*, 266 Va. 188, 203-04, 585 S.E.2d 557, 566 (2003). In that case, plaintiff was severely injured in an automobile accident. As a result of the accident plaintiff sustained catastrophic injuries, including permanent physical and mental disabilities. The defendant argued that the trial court erred by refusing to permit defendant to introduce evidence of plaintiff's history of crack cocaine use, depression, and short term memory loss one year before the accident. More specifically, defendant claimed that the court erred in refusing to permit defendant to cross-examine plaintiff's expert witnesses regarding plaintiff's pre-accident use of crack cocaine and its effect on his post-accident condition and plaintiff's pre-accident bouts of depression and their relationship to his post-accident claims for depression. *Id.* The plaintiff sought damages for cognitive and emotional injuries he sustained, including memory loss and depression. Plaintiff's treating physician, Dr. Bethea, described plaintiff's emotional instability and depressive condition, including short-term memory loss. Dr. Kreutzer, a neuropsychologist, also testified for plaintiff and described his range of post-accident cognitive defects, including memory loss and concentration problems. *Id.* Outside the presence of the jury, Dr. Bethea stated that habitual use of cocaine can cause memory loss, but stated it was his opinion that such use did not affect his opinion regarding the accident having caused plaintiff's deficits. In addressing questions about plaintiff's short-term memory loss, Dr. Bethea also said plaintiff "was deficient in a brain-injury pattern, not a drug-injury pattern." *Id.*

The Virginia Supreme Court noted that "cross-examination on a matter relevant to the litigation and put in issue by an adversary's witness during a [trial] is not a privilege but an absolute right." The Court went on to say, "[h]owever, evidence sought to be elicited during cross-examination must be relevant," and evidence is relevant if it tends to prove or disprove, or is pertinent to, matters in issue. *Id.* at 205, 585 S.E.2d at 566-67. Further, in deciding what is relevant, the Court said "every fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue is relevant." *Id.*

The *Hugen* Court concluded that the trial court properly refused defendant's attempt to cross-examine plaintiff's expert witness on plaintiff's prior drug use because that evidence was not relevant since there was no evidence plaintiff's brain injury or depression was caused by or related to drug

use. Accordingly, the Court held that evidence of plaintiff's prior use of cocaine or his depression could not prove or disprove matters in issue. *Id.* This was based upon Dr. Bethea's testimony, outside the presence of the jury, that plaintiff's injuries were not caused by drug use. Similarly, Dr. Kreutzer testified outside the presence of the jury that "there's no indication in [plaintiff's medical] record that this man suffered medically, neurologically, as a consequence of drug or alcohol use." Therefore, the Court concluded that the trial court properly prevented defendant from cross-examining plaintiff's experts regarding prior drug or alcohol use. *Id.*

In the present case, it appears that the trial Court may need to conduct an examination of plaintiff's experts, outside the presence of the jury, to determine whether plaintiff's current traumatic brain injury is related in any way to his alleged alcohol abuse. If plaintiff's own medical doctor(s) indicates plaintiff's traumatic brain injury is unrelated in any way to his alleged alcohol abuse, then defendant should not be allowed to cross-examine plaintiff's medical doctor expert regarding possible alcohol abuse and its effects on his alleged traumatic brain injury. Such an inquiry assures that the evidence is relevant and that it is more probative than prejudicial.

That leaves the question of whether defendant should be allowed to put on testimony during his case regarding such alleged alcohol abuse. As noted above, Dr. Sautter can only testify to plaintiff's mental condition, not as to the causation of his traumatic brain injury, which is a physical injury to his body. Of course, if plaintiff's own evidence fails to raise any mental condition that could be related to both his injury and possible alcohol abuse, then evidence by defendant on such matters would be irrelevant because plaintiff would not have put the matter in issue. However, if such matter is in issue, then examination of Dr. Sautter regarding the mental effects of such alleged alcohol abuse would likely be relevant and admissible. Nonetheless, it is ultimately up to the trial judge to consider the admissibility based upon the facts before the Court and to consider any appropriate instructions to the jury regarding the use for which this evidence should be used. *Harward,* 5 Va. App. at 474, 364 S.E.2d at 514; *see Lewis v. District of Columbia,* 793 F.2d 361, 363-64 (1986) (limiting instruction).

## D. Use of Heroin and Cocaine

The defendant also asserts that plaintiff reported to his own neuropsychologist that he used cocaine and heroin on a regular basis after the accident. Defendant asserts such drug use causes cognitive deficit and that it is important to distinguish between cognitive deficits that resulted from the

accident versus cognitive deficits that resulted from such drug use. Defendant's Brief, p. 6.

In determining whether cross-examination of plaintiff's physicians should be allowed on this subject, the same analysis reviewed above as to alcohol use applies to drug use. Similarly, in determining whether to permit examination of Dr. Sautter on this matter, the analysis regarding alcohol abuse also applies here to drug use.

### E. Prior Motor Vehicle Accidents

Plaintiff has moved in limine to exclude evidence that he was involved in prior motor vehicle accidents and sustained various injuries. However, it appears from the briefs and oral argument that the only injuries that could arguably be related are a prior shoulder injury and a shoulder injury resulting from this accident. At oral argument, plaintiff's counsel asserted that plaintiff's prior accidents only involved his right shoulder, while this accident involves an alleged injury to the left shoulder. Therefore, based on that representation, evidence of such prior shoulder injury is irrelevant to his current injury. To the extent there is any doubt about whether any of the prior accidents involved the same injuries alleged as a result of this accident, the parties should raise the need for questions to be asked of the physicians outside the presence of the jury.

### F. Prior Barroom Fight

Plaintiff has moved in limine to exclude any reference to a barroom fight in which he was previously involved and in which he suffered a blow to his head. For the same reasons discussed above regarding plaintiff's alleged alcohol and drug use, unless defendant can show through plaintiff's treating physician that there is some relationship between plaintiff's prior head blow and the current injuries, then defendant will not be permitted to inquire about the barroom fight during cross-examination. Any such questioning should be performed initially outside the presence of the jury.

As for defendant asking questions of Dr. Sautter, such questions may be asked if Dr. Sautter is prepared to testify that, in his expert opinion, mental injuries resulting from the prior blow to the head are in fact related to any current mental injuries plaintiff claims. Furthermore, even if Dr. Sautter indicates outside the presence of the jury that there is a relationship, his testimony before the jury should not mention the fact that the blow to the head took place in a fight or that it took place in a barroom, since the prejudice

flowing from such facts outweighs their probative value. *See Cumbee v. Commonwealth*, 219 Va. 1132, 1138, 254 S.E.2d 112, 116 (1979).

## G. Receipt of Long Term Disability Payments

Plaintiff seeks to limit any reference to the fact that he was out of work at the time of the accident and was receiving disability benefits as a result of a permanent shoulder injury incurred during his employment at General Electric in 1998. Defendant asserts that such information is relevant because plaintiff's "willingness to return to work or even find work following the motor vehicle accident with the defendant may be influenced by his receipt of the disability income."

The first question that must be asked is whether such information is relevant. As noted above, "every fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue is relevant." *Hugen*, 266 Va. at 205, 585 S.E.2d at 566-67. However, even if relevant, the prejudice of admitting some evidence may outweigh its probative value. *Singleton v. Commonwealth*, 19 Va. App. 728, 734, 453 S.E.2d 921, 925 (1995). In this case, defendant argues that plaintiff's continued receipt of disability benefits from a prior permanent shoulder injury in 1998 is relevant to show plaintiff is disinclined to return to work. As noted above, it is difficult for the Court to rule outside the trial context. However, it appears that such evidence may be relevant, depending upon the testimony at trial. Nonetheless, the Court must address the suggestion that the collateral source rule applies, before analyzing probative value versus prejudice.

At first blush, it might seem that the Virginia collateral source rule would prohibit introduction of such evidence, but a closer look reveals a different result. The Virginia collateral source rule was first recognized more that one hundred years ago in *Baltimore & Ohio RR. v. Wightman*, 70 Va. (29 Gratt.) 431 (1877), where the Virginia Supreme Court held that "the trial court did not err in refusing to admit evidence offered by the defendant in a tort case to show that the wife and children of a deceased had received proceeds from life insurance policies in the sum of $5,000.00." *Bullard v. Alfonso*, 267 Va. 743, 745-46, 595 S.E.2d 284, 285 (2004). The Virginia Supreme Court also recently applied the collateral source rule in *Acuar v. Letourneau*, 260 Va. 180, 188-89, 531 S.E.2d 316, 320 (2000), where it held that portions of bills for medical expenses written off by a plaintiff's health care providers could not be deducted from the amount of damages owed by a tortfeasor because an injured party should be made whole by the tortfeasor, not by a combination of compensation from the tortfeasor and collateral sources. *Id.* at 192-93, 531

S.E.2d at 323. Also relevant to the discussion is Va Code § 8.01-35, which provides:

> In any suit brought for personal injury or death, provable damages for loss of income due to such injury or death shall not be diminished because of reimbursement of income to the plaintiff or decedent from any other source, nor shall the fact of any such reimbursement be admitted into evidence.

This statute provides a statutory collateral source rule, though the Virginia Supreme Court has never held that it is *the* statutory embodiment of the Virginia common law collateral source rule. Nonetheless, both the statute and the common law rule appear to assume that the reimbursement coming to plaintiff in some way results from his injury. That is not the case here. Therefore, it is not necessary to conduct a collateral source rule analysis.

Many courts have recognized that collateral source benefits evidence may be admissible to show the worker's motivation for exaggerating injury and desiring not to return to work. William H. Danne, Jr., Annotation, Admissibility of Evidence that Injured Plaintiff Received Benefits from a Collateral Source, on Issue of Malingering or Motivation to Extend Period of Disability, 47 A.L.R. 3d 234, 238 (1973).

The Court must still consider whether the admission of such evidence is more prejudicial than probative. In doing so, it is helpful to consider whether the prejudice plaintiff would suffer (from a fact-finders knowledge of his receiving such benefits) would be outweighed by the probative benefit to defendant of having the fact finder know of plaintiff's disincentive to work or seek work. The Court concludes that, in order for the probative value to the defendant to outweigh the prejudice to the plaintiff, defendant will have to make a threshold showing to the Court (outside the hearing of the jury) that there is evidence that plaintiff is malingering. The trial court will have to decide whether the weight of such evidence of malingering, if any, is strong enough to overcome the prejudice to plaintiff. Therefore, defendant must raise this issue at trial.

### H. Bankruptcy Filings

Plaintiff also asserts that defendant should not be able to inquire at trial about his prior bankruptcy filings. Defendant asserts such filings are relevant because some of plaintiff's medical bills from the injury may have been included in the filing(s) *and* because it may reveal that plaintiff's alleged

current inability to attend to his personal financial affairs predated the accident. As a preliminary matter, the Court notes that plaintiff's counsel indicated at oral argument that none of plaintiff's medical bills from the subject accident were included in either of the bankruptcies. Therefore, assuming that to be the case, the only potential relevance is defendant's assertion that it may reveal plaintiff's alleged current inability to attend to his personal financial affairs *before* his accident. Such evidence could undercut plaintiff's assertion that his injuries resulted in an inability to manage his financial affairs as a result of cognitive impairment flowing from a traumatic brain injury.

The probative value of such testimony is marginal since there are many factors that could combine to require the filing of bankruptcy. The prejudice of such evidence is the negative inference that some people attach to such a filing. *See Riegert v. Commonwealth*, 218 Va. 511, 521, 237 S.E.2d 803, 809 (1977). Unfortunately, with the limited information currently before the Court, it is impossible to accurately weigh the probative value versus the prejudice. Therefore, should defendant wish to pursue this line of questioning at trial, he should be prepared to put on evidence outside the presence of the jury regarding the factors that may have resulted in plaintiff's bankruptcy and whether an inability to manage his finances was the cause of such bankruptcy filing.

### I. Pre-Accident Chiropractic Care

Plaintiff moves to exclude evidence that he saw a chiropractor before this accident. Defendant contends that there should be no blanket exclusion of such evidence. Plaintiff counters that defendant has not identified an expert who can make such testimony relevant.

Va. Code § 8.01-401.2 provides that chiropractors can render expert opinions in those areas defined by Va. Code § 54.1-2900. As noted in *Brown v. Commonwealth Petroleum Servs., Ltd.*, 63 Va. Cir. 185, 188 (Loudoun County 2003), a chiropractor may testify as an expert witness as to a diagnosis within the scope of the practice of chiropractic. The Virginia Legislature has carved out that exception to the general rule recognized in *Im*, just as the Virginia Supreme Court carved out an exception to the rule in its *Velazquez* opinion. However, defendant will have to show the relevance of such testimony outside the presence of the jury and the trial judge will have to weigh its prejudice versus probativeness, if it is relevant. In other words, defendants will have to show that plaintiff was treated for a similar injury

before this accident, that such injury had not resolved, and that it somehow overlapped with the current alleged injury.

## J. Pre-Sentence Report and Living Arrangements

Defendant requests that the Court unseal plaintiff's pre-sentence report in his first offender matter so that defendant may obtain the names of two women that knew him before his current injury and who can testify about his pre-accident cognitive abilities. Plaintiff notes that the plaintiff's deposition was taken long ago and defendant has not acted timely in making this request.

Va. Code § 19.2-299 provides that the pre-sentence report "shall at all times be kept confidential" and that "[a]ny report so filed shall be made available only by court order and shall be sealed upon final order by the Court. . . ." While this statute requires that the report be kept confidential, there appears to be good cause for an *in camera* review of such criminal file for the limited purpose of determining whether the pre-sentence report even contains the identity of these two women. The Court has conducted such *in camera* review and the pre-sentence report does not contain the names of any such women. The Court finds no good cause for defendant to review such pre-sentence report. As for the related request of the plaintiff that defendant be precluded from asking questions about plaintiff's living arrangements with these two women, the Court finds that the potential prejudice outweighs the potential probative value based upon the representations before the Court.

## IV. Conclusion

Plaintiff's motion in limine regarding Dr. Sautter's opinions is granted in part and denied in part, as reflected above. Plaintiff's motion in limine regarding plaintiff's first offender adjudication is granted. Plaintiff's motion in limine regarding alcohol consumption is conditionally denied. Plaintiff's motion in limine regarding use of heroin and cocaine is conditionally denied. Plaintiff's motion in limine regarding admissibility of his prior motor vehicle accidents is conditionally granted. Plaintiff's motion in limine regarding his barroom fight is conditionally granted in part and denied in part. Plaintiff's motion is limine regarding receipt of long term disability payments is conditionally denied.

Plaintiff's motion in limine regarding plaintiff's bankruptcy filings is conditionally denied. Plaintiff's motion in limine regarding plaintiff's pre-accident chiropractic care is conditionally denied. Plaintiff's motion in limine regarding his living arrangements is granted. Defendant's motion to unseal

plaintiff's pre-sentence report regarding his first offender adjudication is denied. Because the Court has reviewed the contentions of both parties in the body of this Opinion and Order and because the briefs of the parties are ordered filed, the Court dispenses with the Rule 1:13 counsel endorsement requirement and notes the exceptions of both parties.

It is so ordered.