Present:  All the Justices

VIDA SAMI

v.  Record No. 992345      OPINION BY JUSTICE ELIZABETH B. LACY
                                    September 15, 2000
MILES VARN, M.D. AND
JULIAN ORENSTEIN, M.D.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
M. Langhorne Keith, Judge

In this appeal, we consider whether the trial court erred in holding that an obstetrician-gynecologist was not qualified to give expert testimony on the standard of care for a pelvic examination performed by an emergency room physician.

Vida Sami went to the emergency room of Fairfax Hospital on January 26, 1994.  She told the hospital personnel she was pregnant and that she was in pain and experiencing vaginal bleeding.  Three separate pelvic examinations were performed on Sami:  one by a medical resident; another by an emergency room physician, Dr. Miles Varn; and a third by the resident obstetrician-gynecologist on call at the hospital, Dr. Barbara A. Dill.  Their conclusions were that Sami had undergone a spontaneous abortion or miscarriage and, according to Dr. Dill, the "miscarriage had completed itself."  Sami was discharged from the hospital and given instructions for a follow-up appointment within four weeks.

Sami returned to the Fairfax Hospital emergency room in April of that year, and again in June, complaining of pain.

Dr. Julian Orenstein, an emergency room physician, performed a pelvic examination and discharged Sami, instructing her to take a non-prescription pain medication.

In late June 1994, Sami went to the office of Dr. Herbert Roberts, an obstetrician-gynecologist, complaining of continuing abdominal pain. Dr. Roberts performed an abdominal examination, administered a sonogram, and found a "pelvic mass." When Dr. Roberts operated on Sami to remove the mass, he discovered that the mass was a second uterus containing a twelve to fifteen-week-old dead fetus.

Sami filed a motion for judgment against a number of physicians at Fairfax Hospital, including Drs. Varn and Orenstein, alleging negligence and "infliction of emotional distress."[1] Sami filed a second motion for judgment against Fairfax Hospital on the same theories, claiming that the Hospital breached its duty to properly supervise its employees. The motions for judgment were consolidated.

During a jury trial, Sami sought to qualify Dr. Roberts as an expert witness on the standard of care. Following voir dire of Dr. Roberts, the trial court concluded that Dr. Roberts was qualified as an expert on the standard of care applicable to the actions of Dr. Dill, an obstetrician-

---

[1] The other defendants in this action were dismissed by the trial court and are not involved in this appeal.

2

gynecologist, but that he was not qualified to testify to the standard of care applicable to Drs. Varn and Orenstein, emergency room physicians. The trial court held that Dr. Roberts did not "demonstrate[] expert knowledge of the standards of defendant[s'] specialty," and that he did not "have an active clinical practice in ER" or a related field. Without Dr. Roberts' testimony, Sami did not have an expert to establish the standard of care and breach thereof by Drs. Varn and Orenstein, and the trial court sustained a motion by those defendants to dismiss Sami's claims against them.

Following further testimony, the jury returned a verdict in favor of the hospital. Sami filed this appeal asserting that the trial court erred in holding that Dr. Roberts was not qualified to offer expert testimony on the standard of care applicable to the pelvic examinations performed by Drs. Varn and Orenstein.

The qualification of a witness as an expert is governed by Code § 8.01-581.20, which states, in relevant part:

> A witness shall be qualified to testify as an expert on the standard of care if he demonstrates expert knowledge of the standards of the defendant's specialty and of what conduct conforms or fails to conform to those standards and if he has had active clinical practice in either the defendant's specialty or a related field of medicine within one year of the date of the alleged act or omission forming the basis of that action.

3

Drs. Varn and Orenstein argue that the trial court properly declined to qualify Dr. Roberts as an expert on the standard of care applicable to them on two grounds: (1) because Dr. Roberts did not demonstrate expert knowledge of their specialty, emergency room medicine; and (2) because he had not had a clinical practice in their specialty or a related field within one year preceding the date of the alleged malpractice. We disagree with both of these arguments.

Whether a witness demonstrates expert knowledge of the appropriate standards of the defendant's specialty is a question largely within the sound discretion of the trial court. Lawson v. Elkins, 252 Va. 352, 354, 477 S.E.2d 510, 511 (1996)(citing Grubb v. Hocker, 229 Va. 172, 176, 326 S.E.2d 698, 700 (1985)). However, we will reverse a holding that a witness is not qualified to testify as an expert when it appears clearly from the record that the witness possesses sufficient knowledge, skill, or experience to make him competent to testify as an expert on the subject matter at issue. Noll v. Rahal, 219 Va. 795, 800, 250 S.E.2d 741, 744 (1979).

In this case, Dr. Roberts testified that he was familiar with the standards of care applicable to pelvic examinations and that these standards were the same for an emergency room physician and an obstetrician-gynecologist. Dr. Dill, a

defense witness, testified that she knew of no "variation among the medical profession on performance of a pelvic examination."

Nothing in the record in this case contradicts the testimony of Drs. Roberts and Dill, that the standards applicable to the performance of a pelvic examination by an obstetrician-gynecologist and an emergency room physician are the same. Dr. Roberts' lack of knowledge regarding certain procedures of emergency medicine might disqualify him from rendering expert testimony as to those procedures, but that lack of knowledge does not preclude him from giving expert testimony on procedures which are common to both emergency medicine and the field of obstetrics-gynecology and are performed according to the same standard of care. See Griffett v. Ryan, 247 Va. 465, 472-73, 443 S.E.2d 149, 153-54 (1994).

In light of the record in this case, the trial court was not entitled to ignore the uncontradicted testimony that the standard of care for the performance of pelvic examinations was common to both specialties. Cheatham v. Gregory, 227 Va. 1, 4, 313 S.E.2d 368, 370 (1984). In qualifying Dr. Roberts to testify as an expert regarding Dr. Dill's performance of a pelvic examination, the trial court acknowledged Dr. Roberts' knowledge of the relevant standard of care for that procedure.

Therefore, we conclude that the trial court abused its discretion in holding that Dr. Roberts did not demonstrate sufficient knowledge of the standard of care at issue in this case to qualify as an expert witness on that standard.

Drs. Varn and Orenstein also argue that the trial court's ruling was correct because Dr. Roberts did not have an active clinical practice in their specialty or a field related to their specialty, as required by § 8.01-581.20. Dr. Roberts does not have an active clinical practice in emergency medicine, but he does have an active clinical practice in obstetrics-gynecology. Sami argues that obstetrics-gynecology and emergency medicine should be considered related fields of medicine for the purposes of § 8.01-581.20 in the instant case because the procedure at issue is performed in both specialties and the standard for performance is identical. We agree with Sami.

We have not previously considered the application of the phrase "related field of medicine" in circumstances similar to those presented in this case.[2] The phrase contemplates a clinical practice which differs from that of the defendant,

_____

[2] In Fairfax Hospital System, Inc. v. Curtis, 249 Va. 531, 537, 457 S.E.2d 66, 70 (1995), the proffered expert had previously practiced as an attending physician in the defendant's specialty, but at the time of the alleged malpractice was the "director of a helicopter transport

6

but the statute provides no guidance for determining whether a clinical practice is "related."  The purpose of the requirement in § 8.01-581.20 that an expert have an active practice in the defendant's specialty or a related field of medicine is to prevent testimony by an individual who has not recently engaged in the actual performance of the procedures at issue in a case.  Therefore, we conclude that, in applying the "related field of medicine" test for the purposes of § 8.01-581.20, it is sufficient if in the expert witness' clinical practice the expert performs the procedure at issue and the standard of care for performing the procedure is the same.

In this case, as recited above, the procedure at issue, a pelvic examination, is governed by the same standard of care in both the emergency room and obstetric-gynecology practice settings.  Nothing in this record indicates that the emergency room setting required the procedure to be performed in a manner different than it would be performed under other circumstances.  Dr. Roberts had an active clinical practice which included the performance of pelvic examinations within one year of the alleged malpractice.  Thus, we conclude that

---

service," an activity which did not qualify as any type of clinical practice.

Dr. Roberts had an active clinical practice in a related field of medicine for purposes of § 8.01-581.20.

Because Dr. Roberts satisfied both requirements of § 8.01-581.20, it was an abuse of discretion by the trial court to rule that Dr. Roberts was unqualified to give expert testimony on the standard of care for the performance of a pelvic examination by the emergency room physicians in this case. Accordingly, we will reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

<u>Reversed and remanded</u>.