Present:  All the Justices

ELIZABETH K. HINKLEY

v.  Record No. 040389  OPINION BY JUSTICE CYNTHIA D. KINSER
                                    January 14, 2005
ANTHONY J. KOEHLER, M.D., ET AL.

              FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
                       Robert M. D. Turk, Judge


     Elizabeth K. Hinkley filed this medical malpractice
action, naming as defendants Anthony J. Koehler, M.D.;
Sanam Emami Campbell, M.D.; David J. Roberts, M.D.
(collectively, "the defendant doctors"); and their employer
Southwest Virginia Physicians for Women, Inc., d/b/a
Obstetrics & Gynecology of Radford (collectively, "the
defendants").[1]  A jury returned a verdict for the
defendants.

     We awarded Hinkley this appeal on the question whether
the circuit court erred in concluding that one of the
defendants' witnesses was qualified under Code § 8.01-
581.20(A) to give expert testimony with regard to the
standard of care.  Because the expert witness had not had
an active clinical practice in the defendant doctors'
specialty or a related field within one year of the alleged

----

     [1] Hinkley also named as defendants Carilion New River
Valley Medical Center along with several of its employees.
Before trial, Hinkley took a nonsuit as to these
defendants.

negligence, we will reverse the judgment of the circuit court.

During her 28th week of a twin pregnancy, Hinkley sought medical attention due to decreased fetal movements and contractions.  Over the course of two days, August 23 and 24, 2001, the defendant doctors attended to Hinkley and her twin fetuses, primarily by monitoring the twin fetuses' heart rates, conducting ultrasound examinations, and reducing Hinkley's contractions.  On the second day, an ultrasound examination revealed that one of the twins had died in utero.  The ultrasound test, along with a Doppler study, indicated that the other twin had "no major anomalies."  However, later that day, the other twin died in utero, as confirmed by a second ultrasound examination. Hinkley then underwent a cesarean section to deliver the dead fetuses.  The preliminary post-operative diagnosis regarding the cause of death was twin-to-twin transfusion syndrome.[2]

Prior to trial, Hinkley filed a motion in limine to exclude testimony from Charles Greenhouse, M.D., one of the expert witnesses designated by the defendant doctors to testify with regard to the standard of care.  Hinkley

_____

[2] No autopsies were performed on the twin fetuses; therefore, the cause of death was disputed at trial.

argued that Dr. Greenhouse did not meet the requirements of Code § 8.01-581.20(A) because he had not practiced in the field of obstetrics within one year of the date of the alleged negligence and had not delivered a baby since 1998. The circuit court took the motion under advisement until Dr. Greenhouse testified at trial.

During the trial, the circuit court heard testimony, outside the presence of the jury, from Dr. Greenhouse about his qualifications. Dr. Greenhouse testified that he had practiced medicine in the field of obstetrics and gynecology for 33 years but that he "gave up delivering, hands-on delivering obstetrics [in] November of 1998." Since 1998, Dr. Greenhouse had "been extremely active in teaching . . . residents . . . , medical students and interns [in] obstetrics and gynecology" as an associate clinical professor at George Washington University Medical School, and in performing consultative work with those individuals, as well as with the partners in his six-person medical practice. Dr. Greenhouse consulted primarily with regard to high-risk pregnancy cases and associated problems. Although Dr. Greenhouse testified that he had consulted on two patients "which [he] actually went in and spoke to," he acknowledged that he was not the "primary care physician for those patients" and had not been for any

3

obstetrical patient since November 1998. Dr. Greenhouse explained that a primary care physician means "the doctor who is responsible for that patient." In Dr. Greenhouse's words, "I don't deliver the patient; however, I am very active in the consulting part." Finally, Dr. Greenhouse testified that he recently had been asked to be on the editorial board review of a journal for obstetrics and gynecology and to do "peer review work for the Medical Gynecological Society in obstetrical cases."

Based on this testimony, the circuit court concluded, over Hinkley's objection, that Dr. Greenhouse was qualified and accordingly admitted him as an expert in the field of obstetrics on both the standard of care and causation. The court reasoned that Dr. Greenhouse's consultative work on a regular basis with physicians who practice obstetrics on a daily basis qualified Dr. Greenhouse under the requirements of Code § 8.01-581.20(A). The court also viewed the provisions of that statute as requiring that "one with certain qualifications shall be considered an expert [but that the statute] doesn't say that these are the only qualifications that [a physician has] to have in order to testify as an expert." According to the court, "the statute doesn't say these are the only individuals" who qualify.

4

When the jury returned to the courtroom, Dr. Greenhouse testified similarly with regard to his 33 years of practice in the field of obstetrics and gynecology, and his teaching and consulting work in the field of obstetrics.  He further stated that he has a full gynecology practice, seeing "patients from all categories gynecologically."  He again admitted that he had not been the primary care physician for any pregnant mother or delivered a baby since November 1998.

In order to qualify as an expert on the standard of care in a medical malpractice action, a witness must satisfy the statutory criteria set forth in Code § 8.01-581.20(A).  Perdieu v. Blackstone Family Practice Ctr., Inc., 264 Va. 408, 419, 568 S.E.2d 703, 709 (2002); see also Sami v. Varn, 260 Va. 280, 283, 535 S.E.2d 172, 174 (2000) ("[t]he qualification of a witness as an expert is governed by Code § 8.01-581.20").  In relevant part, that statute states:

> A witness shall be qualified to testify as an expert on the standard of care if he demonstrates expert knowledge of the standards of the defendant's specialty and of what conduct conforms or fails to conform to those standards and if he has had active clinical practice in either the defendant's specialty or a related field of medicine within one year of the date of the alleged act or omission forming the basis of the action.

5

Code § 8.01-581.20(A). We previously characterized these requisites as the "knowledge requirement" and the "active clinical practice requirement." Wright v. Kaye, 267 Va. 510, 518, 593 S.E.2d 307, 311 (2004). Contrary to the circuit court's comments when ruling on the motion in limine, both of the requirements must be satisfied before an expert can testify as to the standard of care. Id.

In this case, the active clinical practice requirement is at issue, i.e., whether Dr. Greenhouse's teaching and consulting work within one year of the date of the alleged negligence forming the basis of the action constituted an "active clinical practice" within the intendment of Code § 8.01-581.20(A). "[W]hether a proffered witness meets the active clinical practice requirement is . . . determined by reference to the relevant medical procedure." Id. at 522, 593 S.E.2d at 313. For example, in Wright, the relevant procedure was "laparoscopic surgery in the female pelvic area near the bladder involving a surgical stapler." Id. We found that the plaintiff's experts in that case had an active clinical practice with regard to the procedure at issue within the one-year statutory window. Id. However, the crux of that case, with regard to the active clinical practice requirement, focused on and rejected the defendant doctor's argument that an active clinical practice in the

6

defendant's specialty meant that "an expert witness must have performed the same medical procedure with the same pathology in all respects as gave rise to the alleged act of malpractice at issue in order to have practiced in the defendant's specialty."  Id. at 523, 593 S.E.2d at 314.

In contrast, the expert witness in Fairfax Hosp. Sys., Inc. v. Curtis, 249 Va. 531, 457 S.E.2d 66 (1995), did not qualify under the provisions of Code § 8.01-581.20(A) even though up until approximately two years prior to the alleged negligence forming the basis of that action he had worked as a professor of pediatrics and as medical director of a hospital's pediatric intensive care unit.  Id. at 536-37, 457 S.E.2d at 70.  The expert's work at the time of the alleged negligence, as the director of a service that transported sick and injured patients by helicopter, could not be deemed an active clinical practice.  Id. at 537, 457 S.E.2d at 70.

Likewise in Perdieu, we held that two expert witnesses did not have an active clinical practice during the relevant statutory time period.  264 Va. at 419-20, 568 S.E.2d at 709-10.  The alleged negligence forming the basis of that action concerned the care of nursing home patients, including the diagnosis of fractures.  Id. at 420, 568 S.E.2d at 710.  One of the experts had previously worked as

7

the head of a hospital's emergency medicine department and had operated a "walk-in clinic for primary care." Id. at 413, 568 S.E.2d at 706. However, during the relevant time period, the expert had worked one day per week in a clinic and one day per week at a county's health department. He had not treated fractures or cared for nursing home patients. Id. at 420, 568 S.E.2d at 710. The other expert's prior experience had been in "the field of general practice," which had included the treatment of nursing home patients and fractures. Id. at 415, 568 S.E.2d at 707. However, since his retirement approximately eight years before the alleged negligence at issue in that case, the expert's only work in the medical field had been as the "medical officer" for a senior citizen softball league. Id. We concluded that neither expert had " 'recently engaged in the actual performance of the procedures at issue' " in that case.[3] Id. at 420, 568 S.E.2d at 710 (quoting Sami, 260 Va. at 285, 535 S.E.2d at 175).

Although these cases are instructive, they do not provide a definitive answer in this case. This is so because we have never, in those cases or otherwise, defined

---

[3] We also found a third expert witness was not qualified because her only experience with nursing home patients was in an acute-care setting such as a hospital. Perdieu, 264 Va. at 419-20, 568 S.E.2d at 709-10.

8

the phrase "active clinical practice" nor have we addressed whether an expert who only taught and consulted in a defendant's specialty or a related field of medicine during the statutory one-year window nevertheless had an "active clinical practice" within the contemplation of Code § 8.01-581.20(A). But, we have stated that we determine whether a proffered expert witness satisfies the active clinical practice requirement by referring to the "relevant medical procedure" at issue in a case. Wright, 267 Va. at 522, 593 S.E.2d at 313. We also have explained that the phrase " 'actual performance of the procedures at issue' must be read in the context of the actions by which the defendant is alleged to have deviated from the standard of care." Id. at 523, 593 S.E.2d at 314. The question whether a proffered expert witness met the active clinical practice requirement must be analyzed in the same manner. Thus, in this case, we determine whether Dr. Greenhouse, as a teacher and consultant in the field of obstetrics, fulfilled the active clinical practice requirement by examining "the context of the actions by which the defendant[s] [are] alleged to have deviated from the standard of care." Id.

The alleged negligence forming the basis of this action arose out of the direct patient care provided to

9

Hinkley during her pregnancy; and the management, treatment, and delivery decisions that were made when she sought medical attention because of decreased fetal movements and contractions. Hinkley alleged in the motion for judgment that the defendant doctors were negligent by failing to provide proper medical treatment, primarily testing; and by failing to intervene surgically to save the life of the remaining twin after one had died <u>in utero</u>. Her expert witnesses testified that the defendant doctors breached the standard of care by failing to perform certain tests to determine, not just whether the twins were alive, but also whether they were in distress. They further opined that the standard of care required that a recommendation be made to the parents to proceed with delivery especially after one of the twins had died <u>in utero</u>.

However, within the one-year statutory time period, Dr. Greenhouse did not directly care for, provide treatment or management to, or make delivery decisions for any pregnancy. In other words, he had not, as a teacher and consultant in the field of obstetrics, provided direct patient care for any pregnancy since November 1998. Yet, this type of direct patient care is "the context of the actions by which the defendant[s] [are] alleged to have

deviated from the standard of care." Wright, 267 Va. at 523, 593 S.E.2d at 314. Thus, we conclude that Dr. Greenhouse did not satisfy the active clinical practice requirement.

The defendants acknowledge on brief that "the only issue was whether the defendant physicians met the applicable standard of care in their evaluation, management, and treatment of . . . Hinkley's evolving calamity." They argue that, since this case is not about a specific procedure that the defendant doctors physically performed or the technique of delivering babies, Dr. Greenhouse was qualified under Code § 8.01-581.20(A) because he was actively engaged in the management of problems associated with pregnancies. The defendants argue that the only thing Dr. Greenhouse no longer did was personally to deliver babies. We agree that neither a specific procedure nor the physical process of delivering a baby is at issue here, but Dr. Greenhouse did not evaluate, manage, or treat problems in pregnancies in the context of direct patient care as did the defendant doctors. Nor are we persuaded otherwise by Dr. Greenhouse's testimony that he actually talked to two patients for whom he was acting as a consultant. Moreover, his testimony in that regard

11

did not indicate whether that particular consultation occurred within the statutory time period.

As we have said on many occasions, ascertaining whether a proffered witness is qualified to testify as an expert is a determination lying within the sound discretion of the trial court.  Wright, 267 Va. at 520, 593 S.E.2d at 312; Perdieu, 264 Va. at 418, 568 S.E.2d at 709; Noll v. Rahal, 219 Va. 795, 800, 250 S.E.2d 741, 744 (1979); Swersky v. Higgins, 194 Va. 983, 985, 76 S.E.2d 200, 202 (1953).  "A trial court will not be reversed for allowing a witness to testify as an expert unless it appears clearly that he was not qualified in the field in which he gives evidence."  Swersky, 194 Va. at 985, 76 S.E.2d at 202. There is not, as suggested by the defendants, a lower standard of appellate review when a trial court excludes the testimony of a proffered expert witness as compared to when the court admits the testimony.  " 'A trial court's exercise of its discretion in determining whether to admit or exclude evidence will not be overturned on appeal absent evidence that the trial court abused that discretion.' " Wright, 267 Va. at 517, 593 S.E.2d at 310 (emphasis added) (quoting May v. Caruso, 264 Va. 358, 362, 568 S.E.2d 690, 692 (2002)).

12

For the reasons stated, we conclude that the circuit court abused its discretion in this case by permitting Dr. Greenhouse to testify as to the standard of care. In the context of the alleged negligence at issue, Dr. Greenhouse's work as a teacher and consultant did not satisfy the active clinical practice requirement set forth in Code 8.01-581.20(A).[4] One of the purposes of that requirement is to prevent testimony by individuals who do not provide healthcare services in the same context in which it is alleged that a defendant deviated from the standard of care. Today's decision is in accord with that purpose.

Finally, we reject the defendants' argument that any error by the circuit court in allowing Dr. Greenhouse to testify was harmless. The defendants assert that Dr. Greenhouse testified about not only the standard of care but also causation, that Hinkley has not articulated any reason why Dr. Greenhouse was not qualified to testify as to the issue of causation, and that the "jury's verdict was far more likely decided on the issue" of causation. This last assertion is purely speculative; neither the

---

[4] However, we find no merit in Hinkley's argument that Dr. Greenhouse did not satisfy the requirements of Code § 8.01-581.20(A) merely because he personally had never had an obstetrical patient with twin-to-twin transfusion syndrome.

13

defendants nor this Court can ascertain on what issue the jury returned its verdict in favor of the defendants. See Schlimmer v. Poverty Hunt Club, 268 Va. 74, 80, 597 S.E.2d 43, 46 (2004) (finding error was not harmless because we could not determine whether the jury returned a verdict for the defendant due to lack of primary negligence or due to plaintiff's contributory negligence).

Furthermore, the error in allowing Dr. Greenhouse to testify with regard to the standard of care "is presumed to be prejudicial unless it plainly appears that it could not have affected the result." Spence v. Miller, 197 Va. 477, 482, 90 S.E.2d 131, 135 (1955); accord Clohessy v. Weiler, 250 Va. 249, 254, 462 S.E.2d 94, 97 (1995). In this case, it does not plainly appear from the record that the error could not have affected the jury's verdict. This is so despite the fact that the defendants had another expert witness, Wade A. Neiman, M.D., who testified as to both standard of care and proximate causation.

However, Dr. Greenhouse's testimony was in many respects more detailed than Dr. Neiman's testimony. The jury also could have accorded more weight to Dr. Greenhouse's testimony overall because of his 33 years of experience in the practice of medicine. See Black v. Bladergroen, 258 Va. 438, 446, 521 S.E.2d 168, 172 (1999)

14

(considering qualifications of expert witness whose testimony was excluded in deciding issue of harmless error).

For these reasons, we will reverse the judgment of the circuit court and remand this case for a new trial.[5]

<u>Reversed and remanded</u>.

---

[5] In light of our decision, we do not decide whether Dr. Greenhouse was qualified to testify solely on the issue of causation.  We simply point out that the requirements of Code § 8.01-581.20(A) speak only to qualifications needed for an expert to testify about the standard of care.