Present:  All the Justices

TIMOTHY I. LLOYD

v.  Record No. 070190      OPINION BY JUSTICE DONALD W. LEMONS
                                     January 11, 2008
ROBERT C. KIME, III, M.D., ET AL.

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
James V. Lane, Judge

In this appeal, we consider whether the trial court erred in using discovery deposition testimony from the plaintiff's expert witness to sustain a motion in limine excluding the witness's testimony and subsequently granting summary judgment for the defendant based on the plaintiff's lack of an expert witness.  Further, we consider whether the trial court erred in holding that the plaintiff's witness was not qualified to testify as to standard of care, breach of the standard of care, and proximate causation in this medical malpractice action because the expert failed to meet the requirements of Code § 8.01-581.20.

I.   Facts and Proceedings Below

On or about June 12, 2001, Timothy Lloyd ("Lloyd") sustained a back injury while at work.  On June 25, Lloyd was seen by Dr. Robert C. Kime, III ("Dr. Kime"), an orthopaedic surgeon who worked for Hess Orthopaedics and Sports Medicine, P.L.C. ("Hess Orthopaedics") and specialized in surgery of the spine.  Lloyd had a two-week history of severe neck and left

arm pain, as well as motor and sensory deficits on the left side. Dr. Kime determined that Lloyd had two herniated disks in his neck, one at the C5-6 level and one at the C6-7 level. The herniated disks were pressing on nerve roots exiting from the spinal cord and on the spinal cord itself.

On June 29, 2001, Dr. Kime performed an anterior cervical discectomy decompression (a surgical procedure to remove the herniated disks from compressing the nerve roots) on Lloyd. After the surgery, Lloyd was taken to the Post Anesthesia Care Unit ("PACU"). Upon Lloyd's arrival in the PACU at 3:50 p.m., a nurse recorded her assessment that Lloyd "moves left leg, feels touch to right leg, no movement." Between that time and 7:45 p.m., nurses in the hospital recorded on four more occasions that Lloyd was unable to move his right leg, toes, and foot.

After Lloyd's surgery, Dr. Kime performed a detailed neurological exam, and wrote in his operative note at 6:28 p.m. that "[Lloyd] has good motor function and no complaints of residual numbness or tingling in either upper extremity or the left lower extremity. He had no numbness in the right side lower extremity but did complain of diffuse weakness of the right leg and states he could not actively flex or extend the toes." Dr. Kime recorded that the cause of the symptoms was not clear, but that "at worse [sic] the patient has a

small cord contusion and most likely this is a problem that will resolve spontaneously over the course of the next several days to several weeks."

The following morning, Dr. Kime performed another neurological examination at 9:00 a.m. The examination showed that Lloyd had not improved. Lloyd had weakness in his right arm and leg, milder weakness in his left arm, and numbness in his abdomen. He had no tibialis anterior or quadriceps function on his right side, but had some function in the other muscles in his right leg. Because of these symptoms, Dr. Kime started Lloyd on a 24-hour course of the intravenous steroid Solu-Medrol to reduce possible swelling around the spinal cord. An MRI completed around 12:37 that afternoon indicated swelling in the spinal cord at the C6-7 level. Lloyd remained in the hospital until July 5, 2001, when he was discharged to be treated with physical therapy and medication. Lloyd continued to suffer from unsteadiness, weakness in his right arm and leg, and pain in his abdomen. He began to develop difficulty swallowing and sexual dysfunction.

Lloyd filed a motion for judgment against Dr. Kime and Hess Orthopaedics for medical malpractice in the performance of the anterior cervical discectomy surgery and for his post-operative treatment in the hospital. Specifically, Lloyd alleged that Dr. Kime was negligent in performing the surgery

because "Dr. Kime should not have cut Lloyd's spinal cord with his [surgical] instruments so as to leave Lloyd partially paralyzed."  Also, Lloyd alleged that Dr. Kime should have recognized that Lloyd had suffered a partial spinal cord injury during surgery and administered a large dose of Solu-Medrol within the first eight hours after the surgery.  Lloyd designated Dr. Anthony Guy Lace Corkill ("Dr. Corkill") as his only expert witness on the required standard of care, deviation therefrom, and proximate causation.

Dr. Corkill intended to testify at trial that the standard of care for surgeons performing spinal surgeries required Dr. Kime to "not cut the spinal cord with the surgical instruments in such a way as to cause permanent paralysis," and to "initiate conventional heavy steroid dosage immediately post-operatively."  At the time of Lloyd's surgery, Dr. Corkill was a practicing neurologist.  Though Dr. Corkill had performed spinal surgeries, including anterior cervical discectomies, in the past, he had not performed any surgeries, worked in a hospital, or had hospital privileges since 1997.

Dr. Kime moved to exclude the testimony of Dr. Corkill because he did not meet the requirements of Code § 8.01-581.20.  The trial court read portions of the depositions of Dr. Corkill, Dr. Kime, and the defense expert witness Dr. Adel

4

S. Kebaish, and found that the relevant medical procedures in the case were the performance of the surgery itself and the immediate post-operative care following the surgery. The trial court held that Dr. Corkill was not qualified to testify as to the standard of care for either procedure under Code § 8.01-581.20(A), and was also not qualified to testify as to breach of the standard of care or proximate causation. The court denied Lloyd's request to file a supplemental expert designation to offer another surgeon to testify on the standard of care, because the time for designation of experts pursuant to the pretrial scheduling order had expired.

After the trial court granted Dr. Kime's motion in limine to exclude Dr. Corkill's testimony, Dr. Kime moved for summary judgment on the grounds that Lloyd had no designated expert witness to testify on the standard of care, breach of that standard, or proximate causation, and therefore could not establish a prima facie case of medical malpractice. The court granted the motion for summary judgment.

Lloyd appeals to this Court on six assignments of error:

1. The trial court erred in excluding Lloyd's expert witness and entering summary judgment based on deposition testimony without allowing Lloyd the opportunity to qualify his expert during voir dire at trial.

2. The trial court erred in holding that one of the relevant medical procedures at issue was the immediate post-operative care following surgery.

5

3.    The trial court erred by failing to consider and apply the presumption of qualification found in VA Code § 8.01-581.20(A).

4.    The trial court erred in assuming, without any evidence, that there was a significant medical distinction in evaluating, diagnosing and treating an acute spinal cord injury in a post-anesthesia care unit as opposed to an office setting or anywhere else.

5.    The trial court erred in excluding Dr. Corkill's testimony of the standard of care required during surgery and in the use of Solu-Medrol when there was no dispute on the applicable standard of care.

6.    The trial court erred in holding that the qualification requirements of VA Code § 8.01-581.20 apply to expert testimony regarding a breach of the standard of care and causation.

## II.  Analysis

A.    Use of Discovery Depositions to Disqualify Expert

Rule 3:20 states: "No motion for summary judgment or to strike the evidence shall be sustained when based in whole or in part upon any discovery depositions under Rule 4:5, unless all parties to the action shall agree that such deposition may be so used."  See also Code § 8.01-420.  We have held that Rule 3:20 and Code § 8.01-420 "impose a very specific condition; namely, the parties must agree to the use of depositions before they may serve as a basis in whole, or in part, for the entry of summary judgment.  This condition requires some showing of acquiescence in the use of a deposition."  Gay v. Norfolk & W. Ry. Co., 253 Va. 212, 214, 483 S.E.2d 216, 218 (1997).  Whether a trial court's actions

6

conflict with the procedural requirements set forth in a rule of this Court or a statute is a question of law that is reviewed de novo.  See Collins v. Shepherd, 274 Va. 390, 397, 649 S.E.2d 672, 675 (2007).

Lloyd argues in assignment of error 1 that the trial court erred in using his expert's discovery deposition to disqualify the expert and to then grant summary judgment based on the disqualification.  Although Dr. Kime did not offer deposition testimony in support of his motion for summary judgment, he did offer it in a manner that was "functionally a motion for summary judgment."  Gay, 253 Va. at 214 n.*, 483 S.E.2d at 218 n.* (holding that regardless of the label, defendant's motion to dismiss for lack of subject matter jurisdiction "was functionally a motion for summary judgment and subject to Rule 3:18 [now 3:20] and Code § 8.01-420").  We have held that Rule 3:20 and Code § 8.01-420 apply when a defendant files a motion in limine seeking the exclusion of the plaintiff's expert testimony, and the court's ruling excluding the testimony is followed by the defendant's motion for summary judgment predicated upon the exclusion.  Parker v. Elco Elevator Corp., 250 Va. 278, 281 n.2, 462 S.E.2d 98, 100 n.2 (1995).  In such a case, the motion in limine is functionally a motion for summary judgment.  Rule 3:20 and Code § 8.01-420 therefore apply to Dr. Kime's motion to

7

exclude Dr. Corkill's testimony in this case.  Deposition testimony could not be used to support the motion in limine unless Lloyd acquiesced.

Dr. Kime argues that Lloyd acquiesced in the use of the deposition by quoting it in his "Argument in Opposition to the Motion to Exclude" and his "Motion to Reconsider."  Rule 3:20 and Code § 8.01-420 state that "[n]o motion for summary judgment shall be sustained when based in whole or in part" on discovery depositions unless the parties agree that depositions can be used.  Rule 3:20 (emphasis added).  Under Rule 3:20 and Code § 8.01-420 discovery depositions cannot be used to support a motion for summary judgment unless the parties agree.  The Rule and statute do not apply to the use of depositions to oppose a motion for summary judgment.  See W. Hamilton Bryson, Virginia Civil Procedure § 9.05(10)(e) (4th ed. 2005).  Lloyd's use of Dr. Corkill's deposition to oppose Dr. Kime's motion in limine would be a permissible use.

However, based upon the record of this case, Lloyd did not object to the use of the depositions by Dr. Kime in support of the motion.[*]  See Parker, 250 Va. at 281 n.2, 462

_____

[*]Lloyd maintains that he objected at a hearing on October 30, 2006; however, a transcript of that hearing was not filed in the circuit court clerk's office and, consequently, is not a part of the record.  The transcript is unavailable for our consideration.  Woodfin v. Commonwealth, 236 Va. 89, 97-98, 372 S.E.2d 377, 382 (1988) ("[W]e are limited to the appellate

8

S.E.2d at 100 n.2. Failure to object to the use of the deposition is sufficient to establish acquiescence. Accordingly, based upon the record before us, the trial court did not err in using deposition evidence in the resolution of the motion in limine and subsequent motion for summary judgment.

## B.    Code § 8.01-581.20

"The question whether a witness is qualified to testify as an expert is 'largely within the sound discretion of the trial court.'  In the context of a medical malpractice action, this determination must be made with reference to Code § 8.01-581.20." Perdieu v. Blackstone Family Practice Ctr., 264 Va. 408, 418, 568 S.E.2d 703, 709 (2002) (quoting Noll v. Rahal, 219 Va. 795, 800, 250 S.E.2d 741, 744 (1979)) (internal citations omitted).  " 'A trial court's exercise of its discretion in determining whether to admit or exclude evidence

record in this case in consideration of issues presented here. We are not permitted to supplement the record by referring to [other evidence] not made a part of this record."); Dere v. Montgomery Ward & Co., 224 Va. 277, 281 n.2, 295 S.E.2d 794, 796 (1982) (holding the Court was bound by the record and the circuit court's certified written statement of fact, and "not upon counsel's recollection of what occurred" during proceedings in the circuit court); Rountree v. Rountree, 200 Va. 57, 62-63, 104 S.E.2d 42, 47 (1958) (holding the Court would not consider facts in affidavits attached to the appellate briefs that were not part of the record from the circuit court);  Old Dominion Iron & Steel Corp. v. VEPCO, 215 Va. 658, 212 S.E.2d 715 (1975). See also Godfrey v. Commonwealth, 227 Va. 460, 317 S.E.2d 781 (1984).

9

will not be overturned on appeal absent evidence that the trial court abused that discretion.' " Wright v. Kaye, 267 Va. 510, 517, 593 S.E.2d 307, 310 (2004) (quoting May v. Caruso, 264 Va. 358, 362, 568 S.E.2d 690, 692 (2002)).

The qualification of a witness as an expert on the standard of care in a medical malpractice action is governed by Code § 8.01-581.20, which states in relevant part:

> Any physician who is licensed to practice in Virginia shall be presumed to know the statewide standard of care in the specialty or field of medicine in which he is qualified and certified.  This presumption shall also apply to any physician who is licensed in some other state of the United States and meets the educational and examination requirements for licensure in Virginia.  An expert witness who is familiar with the statewide standard of care shall not have his testimony excluded on the ground that he does not practice in this Commonwealth.  A witness shall be qualified to testify as an expert on the standard of care if he demonstrates expert knowledge of the standards of the defendant's specialty and of what conduct conforms or fails to conform to those standards and if he has had active clinical practice in either the defendant's specialty or a related field of medicine within one year of the date of the alleged act or omission forming the basis of the action.

Under this statute, there are two methods by which a physician is presumed to know the statewide standard of care in his particular specialty or field of medicine:

> (1)  If the physician is licensed in Virginia, he is presumed to know the standard of care of the specialty or field of medicine

10

in which he is qualified and certified. Wright, 267 Va. at 518, 593 S.E.2d at 311.

(2) If the physician is licensed out-of-state, but meets the educational and examination requirements of the statute, he is presumed to know the standard of care of the specialty or field of medicine in which he is qualified and certified. Id.

If neither situation applies, a witness nonetheless may be qualified to testify as to the standard of care if the witness demonstrates "sufficient knowledge, skill, or experience to make him competent to testify as an expert on the subject matter at issue." Christian v. Surgical Specialists of Richmond, Ltd., 268 Va. 60, 65, 596 S.E.2d 522, 524 (2004); Sami v. Varn, 260 Va. 280, 284, 535 S.E.2d 172, 174 (2000); Hinkley v. Koehler, 269 Va. 82, 88, 606 S.E.2d 803, 806 (2005).  In all cases, to qualify as an expert witness on the standard of care, the witness must have expert knowledge on the standard of care in the defendant's specialty and an "active clinical practice in either the defendant's specialty or a related field of medicine within one year of the date of the alleged act or omission forming the basis of the action." Code § 8.01-581.20.

In this case, the parties disagree on the subject of Dr. Corkill's qualification.  Lloyd argues in assignments of error 2, 3, and 4 that the trial court erred by failing to properly apply the requirements of qualification in Code § 8.01-581.20.

11

In order to qualify a witness as an expert on the standard of care, the proponent of the expert must show, among other things, that the "specialty or field of medicine in which [the expert] is qualified and certified" is the same as the defendant's specialty or a related field of medicine. For example, in Griffett v. Ryan, 247 Va. 465, 472-73, 443 S.E.2d 149, 153-54 (1994), we held that the expert, an internist, was qualified to testify because he demonstrated that the standard of care in his field did not vary from the standard of care in the defendant's field, gastroenterology, a subspecialty of internal medicine.

Evidence produced by Dr. Kime indicated that Dr. Corkill did not have an active clinical practice in neurosurgery. However, for purposes of the motion in limine, the parties agreed that Dr. Corkill was a neurologist. Dr. Corkill was not licensed in Virginia, but Lloyd presented the trial court with a letter from the Virginia Department of Health Professions asserting that "Dr. Corkill's credentials meet the educational and examination requirements for licensure in Virginia." Under Code § 8.01-581.20, Dr. Corkill was therefore presumed to know the standard of care in Virginia for neurologists. It is undisputed that Dr. Kime was an orthopaedist performing a surgery that is also performed by neurosurgeons. Lloyd had the initial burden to demonstrate

that Dr. Corkill's area of qualification and certification had certain overlapping medical practices and similar standards of care with Dr. Kime's. Griffett, 247 Va. at 472-73, 443 S.E.2d at 153-54. In other words, Lloyd had to show that Dr. Corkill's specialty, neurology, is a related field of medicine to Dr. Kime's specialty, orthopaedics, before Dr. Corkill would be qualified to testify as to the intraoperative standard of care in this case.

> The purpose of the requirement in § 8.01-581.20 that an expert have an active practice in the defendant's specialty or a related field of medicine is to prevent testimony by an individual who has not recently engaged in the actual performance of the procedures at issue in a case. Therefore, we conclude that, in applying the "related field of medicine" test for the purposes of § 8.01-581.20, it is sufficient if in the expert witness' clinical practice the expert performs the procedure at issue and the standard of care for performing the procedure is the same.

Sami v. Varn, 260 Va. 280, 285, 535 S.E.2d 172, 175 (2000). "[T]he term 'actual performance of the procedures at issue' must be read in the context of the actions by which the defendant is alleged to have deviated from the standard of care." Wright, 267 Va. at 523, 593 S.E.2d at 314.

Lloyd alleged that Dr. Kime deviated from the standard of care in two different ways in this case. The first deviation was intraoperative and Lloyd alleges that Dr. Kime performed the anterior cervical discectomy negligently. The second

13

deviation was postoperative and Lloyd alleges that in the first seventeen hours after the surgery, Dr. Kime failed to recognize that Lloyd had a new neurological injury, to properly diagnose it, and to properly treat the new injury.

Lloyd argues that Dr. Corkill should be allowed to testify as an expert witness on the standard of care applicable to intraoperative negligence because the parties do not dispute the standard of care for this claim. Lloyd asserts that the requirements of Code § 8.01-581.20 are not applicable if the standard of care is not in dispute. However, "the requirements of Code § 8.01-581.20 are mandatory." Perdieu, 264 Va. at 419, 568 S.E.2d at 709. It was undisputed in this case that Dr. Corkill had not performed any surgeries, worked in a hospital, or had hospital privileges since 1997. Dr. Corkill had no active clinical practice in performing spinal surgery, and Lloyd presented no evidence to suggest that Dr. Corkill's practice as a neurologist included performing spinal surgery. The trial court therefore correctly held that Dr. Corkill was not qualified to testify as an expert witness on the standard of care as to Lloyd's allegation of intraoperative negligence.

However, as to Lloyd's allegation of postoperative negligence, Lloyd did present evidence of an overlap between a neurologist's practice and a neurosurgeon's or othopaedist's

14

practice.  Lloyd's theory of postoperative negligence was that Dr. Kime should have recognized that Lloyd had symptoms of having suffered a new neurological injury during surgery, and should have performed the appropriate diagnostic tests, discovered the injury, and promptly treated the injury with a heavy dose of the steroid Solu-Medrol.  Lloyd presented evidence that the standard of care for neurologists and neurosurgeons or orthopaedists in such a scenario is the same. Lloyd's expert, Dr. Corkill, stated in an affidavit that the neurological symptoms Lloyd displayed post-surgery

> must be evaluated like any new patient.  This is done by taking a thorough history, performing a complete physical examination for neurological function, evaluating and ordering proper tests and studies, reaching a diagnosis and prognosis, and formulating and implementing a treatment plan. . . .  The medical procedures utilized in the evaluation, diagnosis, and treatment of an acute spinal cord injury . . . are the same utilized in the hospital setting as opposed to the office setting, or anywhere else for that matter.  There is no "significant medical distinction" in how these procedures are done in a hospital setting as opposed to an office setting or anywhere else.

Dr. Kime offered no evidence to contradict Lloyd's evidence or suggest that there is a medical distinction between evaluation of a neurological injury post-surgery and any other time.  In light of the record, the trial court could not disregard the uncontradicted testimony that the standard of care for evaluation of a neurological injury was common to

15

neurosurgeons, orthopaedists, and neurologists.  Sami, 260 Va. at 284, 535 S.E.2d at 174.  Therefore, the trial court abused its discretion by failing to qualify Dr. Corkill as an expert on the standard of care with regard to the allegation of postoperative negligence.

Although Dr. Kime presented evidence that Dr. Corkill had not performed surgery within one year of the date of the alleged negligence, he presented no evidence that Dr. Corkill's active practice in the year before Lloyd's surgery was not in a related field of medicine with regard to postoperative diagnosis and care.  Therefore, Dr. Kime failed to rebut the presumption that Dr. Corkill was qualified to testify as to the standard of care on the allegation of postoperative negligence.  We conclude that the trial court abused its discretion in holding that Dr. Corkill was not so qualified.

Additionally, Lloyd argues that the trial court erred in holding that Dr. Corkill was not qualified under Code § 8.01-581.20 to testify as to breach of the standard of care or proximate causation for either allegation of negligence.  Code § 8.01-581.20 addresses only the qualifications of experts to testify on the standard of care and whether the standard of care is breached.  Hinkley, 269 Va. at 92 n.5, 606 S.E.2d at 809 n.5.  The requirements do not address whether an expert

16

witness is qualified to testify on proximate causation. Therefore, the trial court abused its discretion by holding that Dr. Corkill was not qualified to testify on proximate causation as to either allegation of negligence (intraoperatively or postoperatively).

## III. Conclusion

The trial court did not abuse its discretion in its holding that Dr. Corkill was not qualified under Code § 8.01-581.20 to give an opinion on standard of care and breach of the standard concerning the allegation of intraoperative negligence. Because the trial court did not consider the uncontradicted testimony of Dr. Corkill that the standard of care for postoperative evaluation of a neurological injury was common to neurosurgeons, neurologists, and orthopaedists, we hold that the trial court abused its discretion by not finding Dr. Corkill qualified to testify on this issue. On this record, Dr. Corkill is qualified to testify on standard of care, breach of standard of care, and proximate causation as to Lloyd's allegation of postoperative negligence. On this record, Dr. Corkill is not qualified under Code § 8.01-581.20 to testify as to standard of care or breach of standard of care as to Lloyd's allegation of intraoperative negligence, but may be qualified to testify as to proximate causation.

17

Accordingly, the judgment of the trial court will be affirmed in part and reversed in part, and the case is remanded for further proceedings.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded.</u>