PRESENT:  All the Justices

INEZ JACKSON, ADMINISTRATRIX OF THE
ESTATE OF JAMES M. JACKSON, DECEASED

v.  RECORD NO. 080502          OPINION BY JUSTICE CYNTHIA D. KINSER
                                         January 16, 2009
FAIQA AFTAB QURESHI, M.D., ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Karen J. Burrell, Judge

In this wrongful death action, the sole issue is whether a
plaintiff's proffered medical expert witness satisfied the
criteria of Code § 8.01-581.20 to testify on the standard of
care in the defendant's specialty.  Because we find that the
record clearly demonstrates the witness met the statutory
"knowledge" requirement and "active clinical practice"
requirement, see Wright v. Kaye, 267 Va. 510, 518, 593 S.E.2d
307, 311 (2004), and was therefore qualified to testify as an
expert with regard to the medical procedure at issue, we will
reverse the circuit court's judgment excluding the medical
expert witness' testimony.

BACKGROUND

The only issue before us concerns the question whether an
expert witness was qualified to testify.  Therefore, "we need
recite only those facts necessary to our resolution of the
appeal."  Dagner v. Anderson, 274 Va. 678, 681, 651 S.E.2d 640,
641 (2007).  Accord Budd v. Punyanitya, 273 Va. 583, 587, 643

S.E.2d 180, 181 (2007); Molchon v. Tyler, 262 Va. 175, 180, 546 S.E.2d 691, 695 (2001).

Inez Jackson, (Jackson), administratrix of the estate of James M. Jackson, deceased, (infant Jackson), filed a wrongful death action against Faiqa Aftab Qureshi, M.D., and her employer, Children's Specialty Group, PLLC. Jackson alleged, among other things, that Dr. Qureshi, while acting within the scope of her employment, negligently discharged infant Jackson and failed to admit him to inpatient hospital care when the infant presented at an emergency room with signs of respiratory distress and/or pertussis.[1] She claimed that, as a direct and proximate result of Dr. Qureshi's failure to comply with the applicable standard of care, infant Jackson ultimately died from pertussis and other complications caused by the infection. Finally, Jackson asserted that, during all times relevant to the claim, Dr. Qureshi "was a physician licensed to practice medicine in the Commonwealth . . . and was engaged in the practice of pediatric emergency medicine and/or pediatric medicine."

During discovery, Jackson identified John F. Modlin, a physician licensed in New Hampshire and board certified in pediatrics and pediatric infectious diseases, as her only

---

[1] Pertussis, also known as whooping cough, is a highly contagious disease caused by the bacterium Bordetella pertussis.

2

standard of care expert.  Prior to trial, the defendants moved the circuit court to exclude Dr. Modlin's testimony as an expert witness on the standard of care.  The parties agreed that the circuit court could decide the motion by using Dr. Modlin's deposition testimony and voir dire testimony elicited at a previous trial.[2]  Jackson also admitted into evidence a letter from the Commonwealth of Virginia Department of Health Professions, certifying "Dr. Modlin's credentials meet the educational and examination requirements for licensure in Virginia."  Jackson further agreed that if the defendants prevailed on the motion to exclude Dr. Modlin's testimony, she would not name a replacement standard of care expert and "the case would come to a close."

Turning now to the testimony considered by the circuit court, Dr. Modlin, during his voir dire direct examination, first testified about his qualifications.  Dr. Modlin has been a professor of pediatric medicine at Dartmouth Medical School for the past 15 years.  He has served as chairman of the pediatric department for approximately seven years and also has worked as a physician with the infectious disease group at the Dartmouth

---

[2] Prior to filing the instant action, Jackson had filed an identical wrongful death action but had taken a voluntary nonsuit during argument on the defendants' motion to preclude Dr. Modlin from testifying.  At the trial on the nonsuited action, testimony was elicited from Dr. Modlin during the voir dire to qualify him as an expert witness.

Hitchcock Medical Center.  Dr. Modlin explained that, as chairman of the department of pediatrics and as a medical director of the Children's Hospital at Dartmouth Hitchcock Medical Center, he has responsibility for both clinical and academic missions.

With regard to his clinical responsibilities, Dr. Modlin testified that he spends about 25 to 30 percent of his time in direct patient care, divided between two areas, "one as an infectious disease physician," and the other "in a general pediatric clinical position."  He explained that, in the latter setting, he has direct responsibility for patient care of children admitted to "a general pediatric ward," and that many of those patients are infectious disease patients.  Dr. Modlin testified that the pediatric ward admits from five to thirteen patients per day and that he has "direct responsibility for all of those patients."  According to Dr. Modlin, a child may be admitted to the pediatric ward through several different routes:

> They may be admitted directly from the outside, where they do not pass through the emergency room.  There will be other patients who will first come to the emergency room, and because they are sick require admission and will be directly admitted to the ward.
>
> We at Dartmouth have what we call an urgent care clinic, where many of the pediatric patients when they first arrive at the emergency room are so called triaged by the nurses.  They are evaluated, and if they don't have a medical condition that puts them at very high risk where their life is clearly being threatened right then and there, most of the patients

4

who are sick are actually sent up to our urgent care clinic.

So, quite a bit of the care that I provide in the acute care setting actually is done in the urgent care clinic. Again, it's mostly in the setting of supervising pediatric residents and medical students who are maybe providing direct care, but . . . I would have ultimate responsibility for the outcome for those patients.

Dr. Modlin testified at length concerning his knowledge of the infectious disease, pertussis. He responded affirmatively when asked if he is "familiar with the standard of care for a reasonably prudent pediatrician physician in the Commonwealth of Virginia as to the care and treatment of those who present with respiratory problems and/or pertussis."

During cross-examination, Dr. Modlin admitted he is not board certified in pediatric emergency medicine and does not present himself as an expert in "pediatric emergency department medicine." He further admitted that he has not worked in an emergency room department since the early 1980s, and that the hospital in which he currently works does not have a separate emergency department for children. Dr. Modlin, however, testified that he "would feel quite confident to deal with most any infectious disease that presented to an emergency department and . . . that [he] could render an . . . expert opinion, regarding any infectious disease that might show up in the [emergency department]."

5

Dr. Modlin admitted that, during the past five years, he has not been called upon to diagnose a single patient with pertussis in an emergency room setting. However, Dr. Modlin pointed out that he has treated such patients in the urgent care clinic and that this setting is "very similar to an emergency room setting."

Dr. Modlin's deposition, which was taken approximately a month before the first trial, provided much of the same information. When asked about the clinical activities that occupy 25 to 30 percent of his time, Dr. Modlin responded, "I see patients principally in the inpatient setting. I see infectious disease consultations, both adult and pediatric infectious disease consultations; and I also maintain a limited pediatric infectious disease outpatient practice." Dr. Modlin testified that he does see patients in the emergency department on a consultation basis, but admitted that he "actually [does not] work as an emergency room physician." He further admitted that he is "not trained or board certified in emergency medicine." Dr. Modlin, however, testified, "I believe that all pediatricians who care for acutely ill children, regardless of whether they are [emergency department] physicians or pediatric [infectious disease] physicians or general pediatricians should appreciate how pertussis can present in an infant."

Also during his deposition, Dr. Modlin made it clear that his "only concern regarding the standard of care [is that infant Jackson] should have been admitted to the hospital." When asked whether his "sole opinion" is that "the standard of care under the circumstances presented [was] such that the infant . . . should have been admitted to the hospital," Dr. Modlin answered, "Correct."

After considering the evidence and oral arguments, the circuit court granted the defendants' motion. The circuit court, in light of the stipulation reached between the parties, then ordered the case dismissed with prejudice. Jackson appeals from the circuit court's judgment.

                              DISCUSSION

The sole issue on appeal is whether the circuit court abused its discretion by holding that Dr. Modlin was not qualified to testify as an expert on the standard of care. "The question whether a witness is qualified to testify as an expert is largely within the sound discretion of the trial court." Lloyd v. Kime, 275 Va. 98, 108, 654 S.E.2d 563, 569 (2008) (internal quotations omitted); accord Perdieu v. Blackstone Family Practice Ctr., 264 Va. 408, 418, 568 S.E.2d 703, 709 (2002). " 'A decision to exclude a proffered expert opinion will be reversed on appeal only when it appears clearly that the witness was qualified.' " Perdieu, 264 Va. at 418, 568 S.E.2d

7

at 709 (quoting Noll v. Rahal, 219 Va. 795, 800, 250 S.E.2d 741, 744 (1979)); see also Sami v. Varn, 260 Va. 280, 284, 535 S.E.2d 172, 174 (2000) ("we will reverse a holding that a witness is not qualified to testify as an expert when it appears clearly from the record that the witness possesses sufficient knowledge, skill, or experience to make him competent to testify as an expert on the subject matter at issue").

In a medical malpractice action, the qualification of a witness as an expert on the standard of care is governed by Code § 8.01-581.20, which states in relevant part:

> Any physician . . . who is licensed to practice in Virginia shall be presumed to know the statewide standard of care in the specialty or field of medicine in which he is qualified and certified. This presumption shall also apply to any physician who is licensed in some other state of the United States and meets the educational and examination requirements for licensure in Virginia. . . . An expert witness who is familiar with the statewide standard of care shall not have his testimony excluded on the ground that he does not practice in this Commonwealth. A witness shall be qualified to testify as an expert on the standard of care if he demonstrates expert knowledge of the standards of the defendant's specialty and of what conduct conforms or fails to conform to those standards and if he has had active clinical practice in either the defendant's specialty or a related field of medicine within one year of the date of the alleged act or omission forming the basis of the action.

Under this statute, a physician is presumed to know the statewide standard of care in the physician's specialty or field of medicine either if the physician is licensed to practice in Virginia or "[i]f the physician is licensed out-of-state, but

8

meets the educational and examination requirements of the statute." Lloyd, 275 Va. at 109, 654 S.E.2d at 569. The statutory presumption applied to Dr. Modlin. Although he was not licensed to practice in Virginia, Dr. Modlin's credentials satisfied the educational and examination requirements for licensure in the Commonwealth, according to the letter from the Commonwealth of Virginia Department of Health Professions. Thus, it was presumed that Dr. Modlin knew the statewide standard of care in his specialties of pediatrics and pediatric infectious diseases.

Even with the benefit of the presumption, "to qualify as an expert witness on the standard of care, the witness must have expert knowledge on the standard of care in the defendant's specialty and an 'active clinical practice in either the defendant's specialty or a related field of medicine within one year of the date of the alleged act or omission forming the basis of the action.' " Id. (quoting Code § 8.01-581.20). We have previously referred to these two requirements as the "knowledge" requirement and the "active clinical practice" requirement. Wright, 267 Va. at 518, 593 S.E.2d at 311.

With regard to the "knowledge" requirement, Jackson, as the proponent of the expert witness, had the initial burden to "show, among other things, that the 'specialty or field of medicine in which [Dr. Modlin] is qualified and certified' is

9

the same as [Dr. Qureshi's] specialty or a related field of medicine." Lloyd, 275 Va. at 109, 654 S.E.2d at 569-70 (quoting Code § 8.01-581.20). In other words, Jackson had to demonstrate that Dr. Modlin's "area of qualification and certification" in pediatrics and pediatric infectious diseases "had certain overlapping medical practices and similar standards of care with" Dr. Qureshi's "area of qualification and certification" in pediatric emergency medicine. Id. at 110, 654 S.E.2d at 570. This requirement can be shown by evidence that the standard of care, as it relates to the alleged negligent act or treatment, is the same for the proffered expert's specialty as it is for the defendant doctor's specialty. Sami, 260 Va. at 283-84, 535 S.E.2d at 174; see also Griffett v. Ryan, 247 Va. 465, 472-73, 443 S.E.2d 149, 153-54 (1994) (holding that an internist was qualified to testify as an expert because the evidence demonstrated that the standard of care applicable to the internist did not vary from the standard of care in the defendant's specialty, gastroenterology, a subspecialty of internal medicine).

In Sami, this Court held that a trial court abused its discretion by holding that an expert witness whose specialty was in obstetrics-gynecology did not demonstrate knowledge of the standard of care applicable to the defendant's specialty in

emergency medicine.  260 Va. at 284, 535 S.E.2d at 174.  We explained:

> [The expert's] lack of knowledge regarding certain procedures of emergency medicine might disqualify him from rendering expert testimony as to those procedures, but that lack of knowledge does not preclude him from giving expert testimony on procedures which are common to both emergency medicine and the field of obstetrics-gynecology and are performed according to the same standard of care.

Id. at 284, 535 S.E.2d at 174; see also Wright, 267 Va. at 522, 593 S.E.2d at 313 (whether an expert has knowledge of the standard of care for a defendant's specialty must be determined by reference to the relevant medical procedure at issue in a particular case).

Applying these principles, we conclude that Dr. Modlin satisfied the "knowledge" requirement of Code § 8.01-581.20. It is undisputed that the only relevant medical procedure at issue is Dr. Qureshi's decision not to admit infant Jackson to inpatient hospital care when the infant presented to the emergency room showing signs of respiratory distress and/or pertussis.  Dr. Modlin testified in his deposition, "all pediatricians who care for acutely ill children, regardless of whether they are [emergency department] physicians or pediatric

11

[infectious disease] physicians or general pediatricians should appreciate how pertussis can present in an infant."[3]

That uncontradicted testimony demonstrated that the standard of care, as it pertains to the medical procedure at issue, is the same for a physician with specialties in pediatrics and pediatric infectious diseases as it is for a physician with a specialty in pediatric emergency medicine. Thus, we hold that Dr. Modlin met the "knowledge" requirement of Code § 8.01-581.20. Lloyd, 275 Va. at 109-10, 654 S.E.2d at 569-70; Sami, 260 Va. at 284, 535 S.E.2d at 174.

We now move to the question whether Dr. Modlin satisfied the "active clinical practice" requirement. To qualify as an expert, Dr. Modlin needed an " 'active clinical practice in either [Dr. Qureshi's] specialty or a related field of medicine within one year of the date of the alleged act or omission forming the basis of [the] action.' " Sami, 260 Va. at 283, 535 S.E.2d at 174 (quoting Code § 8.01-581.20).

_____

[3] Although Dr. Modlin never stated this opinion to a reasonable degree of medical probability, the defendants did not contemporaneously, or at any other time, object to this testimony. Therefore, the testimony was properly before the circuit court to consider and may be relied upon by this Court on appeal. See Bitar v. Rahman, 272 Va. 130, 141, 630 S.E.2d 319, 325 (2006) (medical expert testimony admitted without a timely objection was properly considered by the jury notwithstanding the fact it was not stated within a reasonable degree of medical probability).

In Sami, this Court addressed the application of the phrase "related field of medicine" contained in Code § 8.01-581.20. There, we stated that "[t]he purpose of the requirement in § 8.01-581.20 that an expert have an active practice in the defendant's specialty or a related field of medicine is to prevent testimony by an individual who has not recently engaged in the actual performance of the procedures at issue in a case." 260 Va. at 285, 535 S.E.2d at 175. We therefore concluded that "in applying the 'related field of medicine' test for the purposes of § 8.01-581.20, it is sufficient if in the expert witness' clinical practice the expert performs the procedure at issue and the standard of care for performing the procedure is the same." Id.

It should be clear from our discussion concerning the "knowledge" requirement that the standard of care for the medical procedure at issue was the same with regard to Dr. Modlin's specialties and Dr. Qureshi's specialty. Thus, the only remaining question is whether Dr. Modlin actually performed the procedure at issue in his clinical practice within one year of the date of the alleged negligent act or omission.

With regard to the only relevant medical procedure at issue in this case, i.e., whether infant Jackson should have been admitted to inpatient hospital care when he presented at the emergency room showing signs of respiratory distress and/or

13

pertussis, the record is clear that Dr. Modlin directly treated patients who presented with respiratory distress or pertussis within one year of the date of the alleged omission in this case. Although Dr. Modlin admitted that he had not treated a patient presenting with pertussis in an emergency room during the relevant time frame, he testified that he had treated such patients in the urgent care clinic. According to Dr. Modlin's uncontradicted testimony, the urgent care clinic where he saw those patients and an emergency room are "very similar" clinical settings. Thus, we conclude that Dr. Modlin met the "active clinical practice" requirement with regard to the relevant medical procedure at issue in this case. Lloyd, 275 Va. at 109-10, 654 S.E.2d at 569-70; Sami, 260 Va. at 284, 535 S.E.2d at 174.

The defendants, however, argue that the 25 to 30 percent of Dr. Modlin's time spent in direct patient care was insufficient to establish that he had an "active" clinical practice with regard to the relevant medical procedure at issue. We find this argument unpersuasive. The provisions of Code § 8.01-581.20 do not set a minimum threshold amount of time a physician must spend in clinical practice to establish that such physician maintains an "active clinical practice," and this Court is not free to impose one. The statute states simply that the proffered expert must have an "active clinical practice" in the

14

defendant's specialty or a related field of medicine "within one year" of the alleged negligent act or omission. Code § 8.01-581.20.

The record clearly demonstrates that, within the relevant one-year time frame, Dr. Modlin was engaged in an ongoing clinical practice and treated patients presenting with pertussis on more than a sporadic basis. In contrast, we held in Hinkley v. Koehler, 269 Va. 82, 606 S.E.2d 803 (2005), that a teaching and consulting physician did not satisfy the "active clinical practice" requirement because he did not provide any direct patient care. Id. at 90, 606 S.E.2d at 807. Certainly, there may be instances when the expert's clinical practice with regard to the medical procedure at issue is so de minimis that the witness would not meet the "active clinical practice" requirement. However, in the case at bar, Dr. Modlin's direct involvement in the treatment and care of patients presenting with respiratory distress or pertussis was not de minimis. In this case, the purpose of the "active clinical practice" requirement, i.e., to prevent testimony by a physician who has not recently engaged in the actual performance of the medical procedure at issue, was clearly satisfied. Thus, we hold that Dr. Modlin met the "active clinical practice" requirement of Code § 8.01-581.20.

CONCLUSION

Because it appears clearly from the record that Dr. Modlin met the "knowledge" requirement and the "active clinical practice" requirement of Code § 8.01-581.20, we conclude that the circuit court abused its discretion in holding otherwise. See Perdieu, 264 Va. at 418, 568 S.E.2d at 709. Thus, we will reverse the judgment of the circuit court and remand for further proceedings.

Reversed and remanded.